Argued and submitted March 2, affirmed September 27, 2000

R. L. COATS,
*Respondent,*

*v.*

STATE OF OREGON,
by and through its Department of Transportation
and by and through its
Bureau of Labor and Industries,
*Appellant.*

(97 CV 0285 MS; CA A105379)

11 P3d 258

Denise G. Fjordbeck, Assistant Attorney General, argued the cause for appellant. With her on the briefs were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Martin E. Hansen argued the cause for respondent. With him on the brief were Philip R. Anderson and Karnopp, Petersen, Noteboom, Hansen, Arnett & & Sayeg, LLP.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

DE MUNIZ, P. J.

## DE MUNIZ, P. J.

Plaintiff initiated this action for breach of contract against the State of Oregon, alleging that the state breached a road construction contract with plaintiff by withholding a $100,000 progress payment due on the contract, based on the state's assertion that plaintiff was required to pay the prevailing wage rate provided by ORS 279.350 to employees working at a rock quarry approximately 8 to 10 miles from the road construction site. The state responded that, because plaintiff was required to pay prevailing wage rates to the workers at the rock quarry and failed to do so, it was entitled under the contract to withhold the $100,000 payment. The state also counterclaimed for breach of contract on the ground that plaintiff's failure to pay the prevailing wage rate violated the contract. Both parties moved for summary judgment. The trial court denied the state's motion and granted plaintiff's motion. The state appeals, and we affirm.

On appeal, the state argues that the trial court erred in granting plaintiff's motion and denying its motion for summary judgment. Because the facts are not in dispute, we review the rulings on the cross-motions for summary judgment to determine whether either party is entitled to judgment as a matter of law. *Protection Mutual Ins. Co. v. Mitsubishi Silicon*, 164 Or App 385, 387 n 1, 992 P2d 479 (1999), *rev den* 330 Or 331 (2000).

In March 1997, plaintiff entered into a contract with the Oregon Department of Transportation (ODOT) to pave a portion of a highway in Deschutes County. Plaintiff owned a property called the Barbed Wire Ranch located some 8 to 10 miles from the portion of the highway he was to pave. Beginning in 1995, plaintiff received a mining permit and mined and sold bentonite from a quarry on the Barbed Wire Ranch. After bidding on the contract at issue in this case, plaintiff began to mine hard rock from the quarry for use on the road paving project. Plaintiff also sold almost as much hard rock from the quarry to others as he used in the road paving project.

Plaintiff did not pay "prevailing wage rates," as defined and discussed below, to the quarry workers. ODOT,

in consultation with the Bureau of Labor and Industries (BOLI), determined that plaintiff should pay prevailing wage rates to the quarry workers. As noted above, the state withheld payment under the contract on the ground that plaintiff was required to do so, and the present litigation ensued.

The trial court ruled in plaintiff's favor on his summary judgment motion, holding that, under the relevant statute and administrative rule, plaintiff was not required to pay prevailing wage rates to the quarry workers because the quarry had been established before plaintiff bid on the contract and because the quarry was not an "on site" quarry.

The state appeals, arguing that the trial court erred in denying its motion for summary judgment and in granting plaintiff's motion. It argues that, under the pertinent statutes and BOLI administrative rules interpreting and implementing those statutes, the workers at plaintiff's quarry were persons employed on a public works project, and thus plaintiff was required to pay them prevailing wages pursuant to his contract with the state. Plaintiff responds that the trial court correctly concluded that he was not required to pay the prevailing wage rate to the quarry employees, because either the court correctly interpreted the administrative rules in question not to require such payment or, alternatively, the administrative rules in question are invalid because they exceed the statutory authority of the agency.

ORS 279.350(1) provides, in pertinent part:

"The hourly rate of wage to be paid by any contractor or subcontractor to workers *upon all public works* shall be not less than the prevailing rate of wage for an hour's work in the same trade or occupation in the locality where such labor is performed." (Emphasis added.)

ORS 279.348(3) provides:

" 'Public works' includes, but is not limited to, roads, highways, buildings, structures and improvements of all types, the construction, reconstruction, major renovation or painting of which is carried on or contracted for by any public agency to serve the public interest but does not include the reconstruction or renovation of privately owned property which is leased by a public agency."

BOLI, the agency that enforces the prevailing wage rate law, has promulgated OAR 830-016-0004, which contains the following definitions:

"(17) 'Public work,' 'public works' or 'public works project' includes but is not limited to roads, highways, buildings, structures and improvements of all types, the construction, reconstruction, major renovation or painting of which is carried on or contracted for by any public agency the primary purpose of which is to serve the public interest regardless of whether title thereof is in a public agency but does not include the reconstruction or renovation of privately owned property which is leased by a public agency.

"* * * * *

"(21) 'Site of work' is defined as follows:

"(a) The site of work is limited to the physical place or places where the construction called for in the contract will remain when work on it has been completed, and other adjacent or nearby property used by the contractor or subcontractor in such construction which can reasonably be said to be included in the site.

"(b) Except as provided in paragraph (c) of this section, fabrication plants, mobile factories, batch plants, *borrow pits*,[1] job headquarters, tool yards and similar facilities, *are part of the site of work provided they are dedicated exclusively, or nearly so, to the performance of the contract or project, and are so located in proximity to the actual construction location that it would be reasonable to include them.* Such facilities which are established by a supplier of materials for the project after the opening of bids shall be deemed to be dedicated exclusively to the performance of the contract or project.

"(c) Not included in the site of work are permanent home offices, branch plant establishments, fabrication plants, and tool yards of a contractor or subcontractor whose locations and continuance in operation are determined wholly without regard to a particular contract or project. In addition, fabrication plants, batch plants, borrow

---

[1] A "borrow pit" exists where "material (as earth or gravel) [is] taken from one location * * * to be used as fill at another location." *Webster's Third New Int'l Dictionary*, 256 (unabridged ed 1993). It is undisputed that plaintiff's rock quarry is a "borrow pit."

pits, job headquarters, tool yards, and similar facilities of a commercial supplier or materialman which are established by a supplier of materials for the project before opening of bids and not on the project site, are not included in the site of work. Such permanent, previously established facilities are not part of the site of the work, even where the operations for a period of time may be dedicated exclusively, or nearly so, to the performance of a contract or project." (Emphasis added.)

BOLI also has promulgated ORS 839-016-0035, which provides, in part,

"(5) Persons employed on a public works project who are employed by a commercial supplier of goods or materials must be paid no less than the prevailing rate of wage when the work is performed at the 'site of work' as that term is defined in OAR 839-016-0004[(21)[2]] or when the work is performed in fabrication plants, batch plants, b[o]rrow pits, job headquarters, tool yards or other such places that are dedicated exclusively or nearly so to the public works project.

"(6) Persons employed on a public works project by the construction contractor or construction subcontractor to transport materials or supplies to or from the public works project are required to be paid the prevailing wage rate for work performed in connection with the transportation of materials or supplies at the 'site of work' as that term is defined in OAR 839-016-0004[(21)]."

The parties do not dispute that the "public work," ORS 279.348(3), at issue in this case is a highway; the sole question presented is whether quarry workers are workers "upon all public works," as that term is used in ORS 279.350(1). The state argues that "upon all public works" is a delegative term and that BOLI's interpretation of that term is entitled to deference because it is the agency responsible for enforcing the prevailing wage laws. *See Springfield Education Assn. v. School Dist.*, 290 Or 217, 621 P2d 547 (1980) (discussing "exact," "inexact" and "delegative" terms used in statutes). Plaintiff responds that, under the *Springfield* rubric, the phrase "upon all public works" is an exact

---

[2] The definition of "site of work" previously was found at OAR 839-016-0004(19) but is now found in subsection 21 of the rule.

term. Alternatively, plaintiff argues that it is an inexact term. If it is either exact or inexact, plaintiff argues, the agency's interpretation of the term is not entitled to deference, and, in fact, the agency's interpretation is incorrect.

The term "public works" is defined by statute. ORS 279.348(3). The question reduces, then, to what the word "upon" means when used in the phrase "workers upon all public works" in ORS 279.350(1). The dictionary contains the following potentially relevant definitions:

> "**upon** \* \* \* **1:** ON **2a:** upward so as to be on ‹jumped ~ the horse› **b:** in a high position on ‹built a house ~ the hill› \* \* \*. *Webster's Third New Int'l Dictionary*, 2517 (unabridged ed 1993).

The second definition quoted above connotes direct proximity of one object to another. If that definition applies here, then "workers upon all public works" are workers who are working at the exact location of the public works. "Upon" also is listed as synonymous with "on," which has numerous definitions that could be relevant in this context:

> "**on** \* \* \* **1a**—used as a function word to indicate position over and in contact with that which supports from beneath ‹the book is ~ the table› \* \* \* **b**—used as a function word to indicate presence within ‹rode there ~ a train› \* \* \* **c**—used as a function word to indicate situation along a whole surface ‹a streak ~ the wall running from top to bottom› or at any particular point on a surface ‹there wasn't a mark ~ it› \* \* \* **2**—used as a function word to indicate contiguity or dependence; esp. (1) contact and support from elsewhere than beneath ‹a fly ~ the ceiling› ‹hanging ~ the wall› (2) location closely adjoining something ‹a town situated ~ the river› \* \* \* **3 a**—used as a function word to indicate position with regard to place, direction, or time; esp. (1) position with regard to a point on the compass ‹~ the west are rolling plains› (2) position near a specified part of something ‹~ the side of the house is a garden› \* \* \*." *Id.* at 1574.

The definitions of "upon" or its synonym "on" that could apply in the context of "workers upon all public works" have some sort of spatial or locational component. However, the dictionary definitions do not tell us whether the legislature intended "upon" to mean essentially "on top of" or at the same location or whether it more had in mind a "location

closely adjoining something" or perhaps a "position near a specified part of something." *Id.* Exact terms must "impart relatively precise meaning[.]" *Springfield*, 290 Or at 223.[3] We therefore conclude that "upon," as used in the phrase "workers upon all public works," is not an "exact" term under the *Springfield* analysis.

█  We are unable to conclude, however, that the term "upon" is a "delegative" term and that we therefore must defer to BOLI's interpretation of it. Under *Springfield*, a delegative term is one used by a legislature that wishes to give an agency "the authority, responsibility and discretion for refining and executing generally expressed legislative policy." 290 Or at 228. Examples of such terms include "good cause," "unfair," "undue," "unreasonable" or "unprofessional conduct." *Id.* at 228, 230.

█  The term "upon," as used in the phrase "workers upon all public works," is an "inexact" term under the *Springfield* rubric because it "embod[ies] complete expression of legislative meaning, even though that meaning may not always be obvious." *Id.* at 224. "When applying such statutory terms to specific facts, whether by order or by rule, the task of the agency, and ultimately of the court, is to determine whether the legislature intended the compass of the words to include those facts." *Id.* The classic example of an inexact term discussed in *Springfield* was whether a person is an "employee" for purposes of various statutes. *Id.* at 225-26. When an agency enforces a statute that contains an inexact term, it is "to determine initially which decision is within the legislative policy, *e.g.,* whether it is within the legislative purpose to consider a certain type of worker an employee under the particular statute." *Id.* at 226. The type of determination required here—a determination of whether people are "workers upon all public works"—is essentially similar to the "employee" type of determination discussed in *Springfield*. In *Springfield*, the court stated:

> "Where the applicability of the term is not certain, its meaning is not a question of lexigraphy, but rather a question of the policy which is incorporated in the legislative

---

[3] Examples of "exact" statutory terms given in *Springfield* were: "21 years of age, male, 30 days, Class II farmland, rodent, Marion County." 290 Or at 223.

choice of that word. The processes of administrative application of such terms and judicial review must be performed to effectuate the complete legislative policy judgment which such terms represent." *Id.*

The question before us, then, is whether BOLI's "site of work" rules effectuate the complete legislative policy judgment expressed by the phrase "workers upon all public works" and, more particularly, whether BOLI's application of the rule to the facts of this case do so.

■ As noted above, all of the potentially relevant dictionary definitions of "upon" have a spatial or locational aspect. At the very least, something that is "upon" something else must be "closely adjoining" or "near" that object. *Webster's Third New Int'l Dictionary* at 1574. BOLI's "site of work" rule, OAR 830-016-0004(21), does reflect this spatial or locational aspect of the term "upon" as used in "workers upon all public works," because it defines a "site of work" as the physical place where the construction occurs, and "other *adjacent* or *nearby* property * * * which can reasonably be said to be included in the site." OAR 830-016-0004(21) (emphasis added). We conclude that the rule, *as written*, may effectuate the complete legislative policy judgment expressed by the phrase "workers upon all public works." Therefore, plaintiff's challenge to the facial validity of the "site of work" rules must fail.

■ That conclusion, however, does not dispose of plaintiff's arguments concerning the agency's *application* of the rule under the circumstances of this case. Although the rule's terms "adjacent" and "nearby" can, in some circumstances, describe something that is "upon" something else, the word "nearby" also is susceptible to a much broader interpretation than the word "upon." All of the relevant definitions of "upon" connote a *close* proximity; "nearby," on the other hand, is a much more flexible term. It might be possible to say, for example, when describing major cities, that Seattle is "nearby" Vancouver, British Columbia. It would not be possible to say, however, that Seattle is "upon" Vancouver, British Columbia.

■■ BOLI's application of its rule in this case necessarily involved a determination under OAR 830-016-0004(21) that

plaintiff's rock quarry was "nearby" a public work—a highway that was under construction some 8 to 10 miles away from the quarry. It is true that we defer to plausible interpretations by agencies of their own rules. *See generally Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 142, 881 P2d 119 (1994) (where "the agency's plausible interpretation of its own rule cannot be shown either to be inconsistent with the wording of the rule itself, or with the rule's context, or with any other source of law, there is no basis on which this court can assert that the rule has been interpreted 'erroneously' "). However, the plausibility of the agency's interpretation of the word "nearby," as used in its rule, is necessarily evaluated in light of the statutory basis for the rule. Here, BOLI's interpretation of its rule leads to a conclusion that workers working in a rock quarry are workers "upon" a highway located some 8 to 10 miles distant from the rock quarry for purposes of ORS 279.350(1). BOLI's interpretation cannot be squared with the language "workers upon all public works," as used in that statute because "upon" as used in that statute connotes a closer physical relationship than exists between the rock quarry and the highway. Under the circumstances, we cannot defer to BOLI's interpretation of its own rule because it is inconsistent with the statute. The trial court correctly concluded that the quarry workers employed by plaintiff are not workers "upon" a public work and properly granted plaintiff's motion for summary judgment and denied the state's motion for summary judgment.

Because of our resolution of this issue, we need not reach the parties' alternative arguments concerning whether plaintiff's rock quarry was "established * * * before opening of bids" and therefore not subject to the prevailing wage law under OAR 830-016-004(21)(c).

Affirmed.