Submitted on remand from the Oregon Supreme Court December 3, 2003, affirmed
March 10, 2004

Lynda L. COATS-SELLERS;
Annette L. Chunn; and Roberta Bowles,
in their capacity as Co-Personal Representatives
in the Estate of R. L. Coats,
*Respondents,*

*v.*

STATE OF OREGON,
by and through its Department of Transportation
and ex rel Jack R. Roberts,
Commissioner of the Oregon Bureau
of Labor and Industries,
*Appellant.*

97-04118-CV; A112532

85 P3d 881

Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and Denise G. Fjordbeck, Assistant Attorney General, for appellant.

Josh Newton, Martin E. Hansen, Cynthia J. Starke, and Karnopp, Petersen, Noteboom, Hansen, Arnett & Sayeg, LLP, for respondents.

Before Haselton, Presiding Judge, and Wollheim and Brewer, Judges.

HASELTON, P. J.

## HASELTON, P. J.

This case is before us on remand from the Oregon Supreme Court, *Coats-Sellers v. ODOT*, 336 Or 60, 77 P3d 635 (2003), with instructions to consider it in light of the court's decision in *Coats v. ODOT*, 334 Or 587, 54 P3d 610 (2002). We previously had affirmed the trial court's decision in this case in light of our decision in *Coats v. ODOT*, 170 Or App 32, 11 P3d 258 (2000), *rev'd*, 334 Or 587, 54 P3d 610 (2002). *Coats-Sellers v. ODOT*, 179 Or App 433, 39 P3d 290 (2002). On remand, we again affirm.

Plaintiff R. L. Coats[1] initiated this action for breach of contract against the Oregon Department of Transportation (ODOT), and defendant Bureau of Labor and Industries (BOLI) counterclaimed against plaintiff pursuant to ORS 279.355 for prevailing wages due to employees.[2] All parties moved for summary judgment, and the trial court granted plaintiff's motion and denied defendants' motion. Defendants appeal, arguing that the trial court should have denied plaintiff's motion and granted defendants' motion.

In an appeal from a judgment resulting from cross-motions for summary judgment, if both the granting of one motion and the denial of the other are assigned as error, both are subject to review. Each party moving for summary judgment has the burden of demonstrating that there are no material issues of fact and that the movant is entitled to judgment as a matter of law. *Eden Gate, Inc. v. D&L Excavating and Trucking, Inc.*, 178 Or App 610, 622, 37 P3d 233 (2002). In regard to each motion, we view the evidence in the light most favorable to the nonmoving party. We turn to plaintiff's motion for summary judgment.

---

[1] Plaintiff is deceased and the personal representatives of his estate have been substituted for him in this action. For the sake of simplicity, we refer to Coats as plaintiff throughout this opinion.

[2] Although the named defendant is the State of Oregon, BOLI and ODOT are involved in distinct aspects of the case: Plaintiff's claim concerns only ODOT, whereas the counterclaim is brought by BOLI. We therefore refer to both BOLI and ODOT as defendants.

In his breach of contract claim, plaintiff alleged that, in March 1996, he and defendant ODOT entered into a contract for construction of a portion of a highway in Grant and Wheeler counties, that he performed all of the terms and conditions of the contract, and that ODOT breached the contract by withholding payment of $44,000. ODOT denied that Coats had satisfactorily performed, joined BOLI as a necessary party, and BOLI counterclaimed for prevailing wages due to employees pursuant to ORS 279.355. Defendants alleged, in part, that Coats was required under the contract to pay applicable prevailing wage rates to his employees working in a rock quarry, aka borrow pit, that supplied aggregate that was used in constructing a portion of the highway, but failed to do so.

Uncontroverted evidence at summary judgment established that, shortly after Coats was awarded the highway construction contract, he entered into an agreement with Rockey Goodell to lease a rock quarry or "borrow pit" known as the "Corn Cob pit" located approximately five miles from the highway construction. The quarry had been in existence since at least the 1960s; but, although Goodell had sold uncrushed rock from the quarry since 1977, he had no permits from state and local authorities for mining the quarry. Goodell and Coats agreed that Coats would apply for the necessary permits, and Coats did so. Although the quarry lease was for a five-year period, the highway construction contract between Coats and ODOT called for Coats to complete the work within several months.

The evidence further showed that, in addition to performing highway construction projects, Coats also did business under the assumed name of Deschutes Ready-Mix Sand and Gravel (Deschutes Sand and Gravel). Deschutes Sand and Gravel had supplied rock products, including products for use on paving and grading projects, since the 1960s. That business was one of the largest rock material suppliers in central and eastern Oregon, with annual rock sales of over $7 million in the mid-1990s. Approximately two-thirds of the gravel that was excavated from the Corn Cob pit while the highway construction project was underway was used on the highway construction project, while most of the remaining gravel was stockpiled for later sale. Deschutes Sand and

Gravel continued to sell rock products from the Corn Cob pit after the work was completed on the highway construction project. The employees of Deschutes Sand and Gravel who worked at the Corn Cob pit were not paid the prevailing wage rate for their work.

In support of his motion for summary judgment, plaintiff argued that, under the pertinent administrative rules, prevailing wage rates were not required for the workers at the Corn Cob pit because that pit was not part of the "site of work" for the highway construction project.

In granting summary judgment for plaintiff, the trial court stated:

"I find that Mr. Coats was a commercial supplier of aggregate to the project. Under OAR 839-16-035(5), the fact that he was also acting as the prime contractor does not change that fact. To find otherwise would be to punish those contractors capable of supplying their own aggregate. The regulations cited do not require separate legal entities. Further, a person in Mr. Coats' position could form two legally distinct business entities; one to supply aggregate, the other to perform construction. To take the position that he cannot 'independently' supply aggregate, truly would place form over substance.

"In this case, the Corn Cob pit was an existing pit leased by Mr. Coats and utilized to fulfill most of the project's needs. However, the work done at the pit, the additional stockpiling of aggregate, and sales of aggregate to others, factually do not support the conclusion that the pit was 'dedicated exclusively or nearly so' to the project. Nor do I find that this pit was at the 'site of work' as defined in 29 C.F.R. Part 5.2(1), given its location to the project."

Defendants appeal, arguing that (1) Coats was not a "commercial supplier" and, thus, the trial court erred in concluding that the portion of the administrative rule concerning commercial suppliers had any applicability in this case; and (2) the trial court erred in concluding that "site of work" did not encompass the Corn Cob pit.

We reject without discussion defendants' contention that Coats was not a "commercial supplier" of rock products and that the Corn Cob pit was dedicated exclusively or nearly

so to the highway construction project, and write only to discuss defendants' contention that the Corn Cob pit was part of the "site of work."

This case has numerous parallels to *Coats* and was remanded to us by the Oregon Supreme Court for reconsideration in light of that case. In *Coats*, the same parties disputed Coats's obligation to pay prevailing wage rates to employees working at a different rock quarry excavating materials for use on a different highway construction project. 334 Or at 589. That case concerned the 1997 versions of the same administrative rules at issue here. In that case—a breach of contract action—the court held that the validity of the administrative rules was not properly at issue because, "[e]ven if plaintiff could not be forced to comply with those rules by operation of law, he nonetheless could bind himself to do so by contract, as he did here." *Id.* at 597. Thus, the question, as the court framed it, was whether the administrative rules "are applicable to plaintiff *as contract terms.*" *Id.* (emphasis in original). The court then remanded to us for further consideration. On remand, we concluded that, under the principles enunciated in *Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 881 P2d 119 (1994), we should defer to the plausible interpretation of the administrative rules by the agency that promulgated them. *Coats v. ODOT*, 188 Or App 147, 152, 71 P3d 172 (2003). The portion of the rule at issue there concerned whether the plaintiff's "borrow pit" was established "before opening of bids." *Id.* at 153. We concluded that the agency's interpretation of that portion of its rule was plausible. We remanded, however, to permit the trial court to rule on the plaintiff's alternative theory in support of summary judgment. *Id.*

This case has many factual and legal similarities to *Coats* but, as explained below, it has key differences, as well. First, the similarities: (1) At least insofar as plaintiff's breach of contract claim is concerned, this case, like *Coats*, is not about the validity of administrative rules but about administrative rules as contract terms.[3] (2) This case, like *Coats*,

---

[3] We note that that principle has no application to BOLI's enforcement action counterclaim. *See Coats*, 334 Or at 595 (validity of administrative rule is at issue upon BOLI's *enforcement* of rule, which had not occurred in that case).

concerns Coats's obligation to pay prevailing wage rates to workers at a rock quarry some miles away from a highway construction project. (3) The text of the rules at issue in the present case and in *Coats* are nearly identical. Nevertheless, there are key differences: (1) The present case concerns different aspects of the administrative rules from those discussed in *Coats*. (2) *Coats* concerned the 1997 version of OAR 839-016-0035 and definitions found in OAR 839-016-0004, whereas this case concerns the 1995 version of OAR 839-16-035 and definitions found in 29 CFR Part 5.2(L).

OAR 839-16-035(5) (1995) provided, in part:

"Persons employed on a public works project who are employed by a commercial supplier of goods or materials must be paid no less than the prevailing rate of wage when the work is performed at the 'site of work' as that term is defined in 29 CFR Part 5.2(L) or when the work is performed in * * * b[o]rrow pits * * * that are dedicated exclusively or nearly so to the public works project."

The crucial distinction between the rule at issue here and the rules at issue in *Coats* is that OAR 839-16-035(5) (1995) incorporated by reference the federal "site of work" definition found in 29 CFR Part 5.2(L), whereas the later version of that rule at issue in *Coats* incorporated by reference BOLI's *own* definition of "site of work" set forth in OAR 839-016-0004(19)(c) (1997).

29 CFR Part 5.2(L), in effect when BOLI promulgated OAR 839-16-035(5) (1995), provided:

"(1) · The site of the work is limited to the physical place or places where the construction called for in the contract will remain when work on it is completed, and, as discussed in paragraph (L)(2) of this section, other adjacent or nearby property used by the contractor or subcontractor in such construction which can reasonably be said to be included in the site.

"(2) *Except as provided in paragraph (L)(3)* of this section, * * * borrow pits * * * are part of the site of the work provided they are dedicated exclusively, or nearly so, to performance of the contract or project, and are so located in proximity to the actual construction location that it would be reasonable to include them.

"(3)   Not included in the site of the work are permanent home offices, branch plant establishments, fabrication plants and tool yards of a contractor or subcontractor whose locations and continuance in operation are determined wholly without regard to a particular federal or federally assisted contract or project. *In addition, * * * borrow pits * * * of a commercial supplier or material man which are established by a supplier of materials for the project before opening of bids and not on the project site, are not included in the site of work. Such permanent, previously established facilities are not a part of the site of work, even when the operations for a period of time may be dedicated exclusively, or nearly so, to the performance of a contract.*"

(Emphasis added.)

Defendants assert that we must defer to BOLI's interpretation that this rule applies to the Deschutes Sand and Gravel employees who worked at the Corn Cob pit. We disagree. BOLI promulgated OAR 839-16-035(5) (1995), which specifically incorporated by reference the federal rule's definition of "site of work," but BOLI did not promulgate the federal definition. The principle of deference to agency interpretation of its own rules does not extend to agency interpretation of rules not promulgated by that agency. *Roseburg Forest Products v. Clemons*, 169 Or App 231, 238 n 6, 9 P3d 123 (2000). That principle extends to this context as well, where administrative rules have been incorporated into a contract as contract terms. In interpreting a contract, our goal is to discern the parties' intent. It is not difficult to arrive at the conclusion that parties who incorporated by reference into a contract a definition found in 29 CFR Part 5.2(L) meant, by doing so, to incorporate the actual federal definition rather than a state agency's subsequent interpretation of the federal definition. In sum, this case does not present a situation in which the court must defer to BOLI's interpretation of the federal rule incorporated by reference into OAR 839-16-035(5) (1995).

We now turn to defendant's specific arguments that the trial court erred in determining that there existed no genuine issue of material fact and that plaintiff was entitled to judgment as a matter of law. Defendants assert that, under the federal standard set forth in 29 CFR Part 5.2(L), the Corn

Cob pit was a part of the site of work. Defendants offer no reasoned support for their assertion. Defendants' entire argument in that regard consists of the following:

> "The former federal standards also require payment of the prevailing wage. Rock pits are included as part of the site of work 'provided they are dedicated exclusively, or nearly so, to performance of the contract or project, and are so located in proximity to the actual construction site that it would be reasonable to include them.' [29 CFR Part 5.2(L)(2).] Here, the project was located five miles away from the rock source; there was no other source of materials so conveniently located. Given the short distance from the project site, and the zeal with which plaintiff pursued this source, indicating its value to him for this project, it is reasonable to include work done at the pit."

Were this a circumstance in which we defer to BOLI's interpretation of the rule, such a bald assertion might be sufficient, although it is difficult for us to understand how plaintiff's "zeal" bears on the question. As noted, though, this is not a circumstance in which we defer to BOLI's interpretation of the rule. Defendants' conclusory assertions, offered with no citation to legal authority, do not persuade us that a rock quarry located five miles from a highway project is at the "site of work" for purposes of 29 CFR Part 5.2(L)(2).[4]

Defendants have offered no persuasive argument that the trial court erred in granting plaintiff's motion for summary judgment and denying defendants' motion. Accordingly, we affirm the trial court's judgment.

Affirmed.

---

[4] *Cf. Beall Transport Equipment Co. v. Southern Pacific*, 186 Or App 696, 700-01 n 2, 64 P3d 1193, *on recons*, 187 Or App 472, 68 P3d 259 (2003) (it is not appellate court's "proper function to make or develop a party's argument when that party has not endeavored to do so itself").