Argued and submitted September 23, 2004, affirmed June 15, petition for review denied December 6, 2005 (339 Or 609)

FARMERS INSURANCE EXCHANGE,
*Respondent,*

*v.*

Jeffrey Scott CRUTCHFIELD,
*Defendant,*

*and*

Holliann NELSON,
aka Holliann Heatherly,
nka Holliann Kaiser,
*Appellant.*

013254E3; A121569

113 P3d 972

Jay D. Enloe argued the cause for appellant. With him on the opening brief was Julie E. Dutton. With him on the reply brief was Lachenmeier Enloe Rall & Heinson.

Thomas M. Christ argued the cause for respondent. With him on the brief was Cosgrave Vergeer Kester LLP.

Before Haselton, Presiding Judge, and Linder and Ortega, Judges.

HASELTON, P. J.

## HASELTON, P. J.

This appeal presents an issue of insurance coverage: Did a liability policy covering an automobile dealership obligate the issuing insurance company to defend or indemnify a person who ostensibly purchased a vehicle from the dealer and shortly thereafter was involved in an accident? Plaintiff Farmers Insurance Exchange brought an action seeking a declaration that the insurance policy it issued to Guthrie Motors, Inc., did not extend to liability incurred when a pickup truck sold by Guthrie Motors was involved in an accident in which defendant Nelson suffered serious injuries.[1] On cross-motions for summary judgment, the trial court granted plaintiff's motion and denied defendant's motion, concluding that, because Guthrie Motors did not own the pickup at the time of the accident, the insurance policy issued by plaintiff did not cover the accident. Defendant appeals and, for the reasons set forth below, we affirm.

The trial court described the events that led to this action:

"[O]n November 8, 1996, defendant Jeffrey Crutchfield drove his 1993 Mitsubishi automobile to Guthrie Motors, where he entered into a contract to trade that car for a 1986 Toyota pickup. This contract required Guthrie Motors to pay some cash back to Mr. Crutchfield because the car he traded in was worth more than the pickup he was purchasing. Guthrie gave Crutchfield a check at the time the contract was entered into in the amount of $1,690.00 with a written understanding that Guthrie would pay a remaining balance of $500.00 once Crutchfield produced clear title to the Mitsubishi. Crutchfield took possession of the pickup pursuant to the contract entered into with Guthrie Motors and later that day was involved in a collision wherein defendant [Nelson] was seriously injured."

Other uncontroverted facts provide context for our analysis. The contract between Guthrie Motors and Crutchfield for the sale of the Toyota pickup included the following notice: "WARNING: There is NO PUBLIC LIABILITY OR

---

[1] The purchaser of the pickup, Crutchfield, was a defendant in the trial court but does not appeal the judgment. As used in this opinion, "defendant" refers to Nelson, who was a passenger in the pickup driven by Crutchfield.

PROPERTY DAMAGE INSURANCE included in this transaction." It also provided that the "purchaser will bear the entire expense of repairing or correcting any defects that presently exist or that may occur in the vehicle." On the day that Crutchfield left the car lot with the pickup, Guthrie Motors prepared a standard form "Application for Title and Registration," listing Crutchfield as the owner. The following day—after the accident in which defendant was injured, but before Guthrie Motors learned of the accident—a Guthrie Motors employee signed the section of the application that states, "I hereby release all rights, title and interest in this vehicle except as otherwise noted on the application for title."

Unbeknownst to Guthrie Motors, there was a lien on the Mitsubishi that Crutchfield had traded in for the Toyota pickup. When a Guthrie Motors salesperson discovered the lien the day after the accident, shortly after executing the "Application for Title and Registration," the salesperson told Crutchfield that "the deal was off" and demanded that Crutchfield return the pickup and Guthrie Motors's partial payment of cash. Otherwise, the salesperson said, Guthrie Motors would "press charges for stealing" the pickup.

By then, of course, the pickup had been wrecked and could not be returned. Nonetheless, Crutchfield returned $700 of the $1,690 that Guthrie Motors had paid him. Eventually—roughly six months after Crutchfield drove off with the pickup—Guthrie Motors was able to clear title to the Mitsubishi and sell it. It then gave Crutchfield a check for $1,200, representing the sum of the $500 balance due under the original agreement and the $700 that Crutchfield had returned after the accident.

At the time of the accident, Crutchfield had no automobile insurance. However, Guthrie Motors was insured under a liability insurance policy issued by plaintiff. That policy included a provision that plaintiff would pay all sums that an "insured" legally must pay as damages because of bodily injury caused by an accident. The policy also provided:

"1.  WHO IS AN INSURED

"a.  The following are 'insureds' for covered 'autos'.

"(1) You for any covered 'auto'.

"(2) Anyone else while using with your permission a covered 'auto' you *own*, hire or borrow except:

"* * * * *

"(d) Your customers, if your business is shown in the Declarations as an 'auto' dealership. However, if a customer of yours:

"(i) Has no other available insurance * * *, they are an 'insured'[.]"

(Emphasis added.)

As a result of the accident, at least two legal proceedings ensued. In the first, a personal injury liability action, Nelson sought damages for her injuries from, among others, Crutchfield and Guthrie Motors. The latter claim was based on the theory that Guthrie Motors owned the pickup at the time of the accident and that it was negligent in allowing Crutchfield to use it. Guthrie Motors denied that it owned the pickup at the time of the accident and moved for summary judgment. The trial court in the personal injury action ruled that Guthrie Motors did not own the pickup at the time of the accident, and it granted summary judgment in favor of Guthrie Motors. Nelson appealed to this court, but, during the pendency of that appeal, the personal injury action was settled. The settlement included an agreement that the judgment in that case would be set aside by stipulation.[2]

In the separate case now before us, plaintiff, which was not a party to the personal injury action, brought a declaratory relief action, seeking a declaration that it is not obligated to defend or indemnify Crutchfield against Nelson. Plaintiff moved for summary judgment, arguing that (1) the trial court here was bound by the trial court's determination in the personal injury case that Guthrie Motors no longer owned the pickup at the time of the accident; and (2) in all

---

[2] The trial court in the personal injury action ultimately vacated its judgment of dismissal and dismissed the case in accordance with the parties' stipulation.

events, as a matter of law, Crutchfield owned the pickup. Defendant filed a cross-motion for summary judgment, arguing that (1) the determinations underlying the judgment in the personal injury action had no preclusive effect because that judgment had subsequently been vacated; (2) because the sales transaction was "incomplete," Guthrie Motors still owned the pickup at the time of the accident; and (3) because Crutchfield was a "customer" of Guthrie Motors, plaintiff's insurance policy applied to the accident in which she was injured.

The trial court initially granted defendant's motion for summary judgment and denied plaintiff's motion. The court agreed with plaintiff that Guthrie Motors was not the owner of the pickup at the time of the accident. Nonetheless, interpreting the policy language set out above, the court initially concluded that, because Crutchfield was a "customer" of Guthrie Motors at the time of the accident and was uninsured, plaintiff's policy applied. In its initial order, the court stated:

"The second possible basis for coverage rests on a determination of whether Mr. Crutchfield was a 'customer' at the time of the November 8, 1996 accident. The policy outlines five exceptions to the requirement that the covered auto be owned by the insured. The fourth exception provides that a 'customer' of the insured (Guthrie Motors) is also insured if the business of the insured is shown in the declarations as an auto dealership and if the 'customer' has no other available insurance. In this case, this court makes the following findings:

"(1) The declaration sheet * * * shows the insured (Guthrie Motors) as an auto dealership, (2) Jeffrey Crutchfield was a 'customer' of Guthrie Motors at the time of the accident on November 8, 1996, and (3) Mr. Crutchfield had no other available insurance. This court finds that a person can be considered a 'customer' by doing business with an auto dealership on a regular basis or by *actively* participating in a business transaction with the dealership. In this case, Mr. Crutchfield was still in the process of completing a business transaction with Guthrie Motors when the accident occurred and, as a result, is considered a customer. This

being the case, Jeffrey Crutchfield was covered by the Farmers Insurance policy, according to the language of the policy 'up to the compulsory or financial responsibility law limit where the covered "auto" is principally garaged.' "

(Emphasis in original.)

Plaintiff sought reconsideration, arguing that, although the trial court correctly had concluded that Guthrie Motors did not "own" the pickup at the time of the accident, the court had erred in concluding that Crutchfield was nonetheless covered by the policy merely because he was a "customer." Plaintiff asserted that, properly interpreted, the policy provides that "a customer of Guthrie Motors, *using a Guthrie Motors-owned vehicle* with Guthrie Motors's permission, will qualify as an insured under Guthrie Motors's policy, if the customer does not have his own insurance." (Emphasis added.) In short, plaintiff asserted, its insurance applied only to automobiles owned by Guthrie Motors.

Persuaded by plaintiff's argument, the trial court granted reconsideration in an order that stated, in part:

"(1) The court concludes that Mr. Crutchfield was a 'customer' of Guthrie Motors at the time of the accident, but that a 'customer' is not an insured under plaintiff's policy except while driving a vehicle that is owned by Guthrie Motors;

"(2) The court concludes that, at the time of the accident, Mr. Crutchfield was not driving a vehicle owned by Guthrie Motors, and thus was not an insured at that time, even though he was a 'customer' of Guthrie Motors at the time of the accident[.]"

The trial court entered a judgment in which it "declare[d] that plaintiff is not obligated to defend or indemnify defendant Crutchfield against defendant Nelson[.]"

Defendant assigns error both to the trial court's grant of summary judgment to plaintiff and to the denial of her motion for summary judgment. Under ORCP 47 C, we review the trial court's decision to determine whether there is any genuine issue of material fact and whether the moving party is entitled to judgment as matter of law. When there are cross-motions for summary judgment and the granting of

one and denial of the other are both assigned as error, both are subject to review. *E.g., Coats-Sellers v. ODOT*, 192 Or App 432, 434, 85 P3d 881 (2004).

Defendant advances two arguments in support of her assignment of error, renewing her contentions below. First, she argues, plaintiff's policy applied to the pickup because Guthrie Motors retained an ownership interest in the vehicle at the time of the accident—that is, an interest sufficient to make it the "owner" for purposes of the policy. Second, she argues, even if Guthrie Motors did not retain an ownership interest in the pickup, the policy covered the accident because Crutchfield was a "customer," and (in defendant's view) the policy extended to customers—regardless of who owned the vehicle.

Plaintiff responds that the subsequently vacated judgment in the personal injury action has a preclusive effect in this case—and, thus, the question whether Guthrie Motors owned the pickup at the time of the accident already has been conclusively determined in plaintiff's favor.[3] Plaintiff also renews the argument, made in its motion for reconsideration below, that, even with respect to the dealership's "customers," the policy applied only to vehicles owned by Guthrie Motors. In all events, plaintiff argues, at the time of the accident Crutchfield was the owner of the pickup, so the policy issued by plaintiff to Guthrie Motors did not cover Nelson's injuries. Because we agree with plaintiff's construction of the insurance policy, we do not address plaintiff's issue-preclusion argument.

■ In general, the construction of an insurance policy, as a species of contract, is a question of law. *May v. Chicago Insurance Co.*, 260 Or 285, 292-94, 490 P2d 150 (1971). " '[I]f the language of the contract is ambiguous, or if technical words, local phrases or terms of art are used and evidence is properly admitted showing meaning, the question becomes one of fact.' " *National Chiropractic Mutual Ins. Co. v. Morgan*, 116 Or App 196, 200, 840 P2d 732 (1992), *rev den*, 315 Or 312 (1993) (quoting *Timberline Equip. v. St. Paul Fire*

---

[3] Plaintiff contends that the parties to the personal injury action could not, by way of settlement and stipulation, act to deprive that judgment of its preclusive potential with respect to other litigation involving other parties.

*and Mar. Ins.*, 281 Or 639, 643, 576 P2d 1244 (1978)). Whether contract language is ambiguous is, itself, a question of law. *Arlington Ed. Assn. v. Arlington Sch. Dist. No. 3*, 196 Or App 586, 595, 103 P3d 1138 (2004).

■■        Oregon courts follow a well-established method in interpreting insurance policies. "A court's goal in interpreting a policy is to determine the intent of the parties." *North Pacific Ins. Co. v. Hamilton*, 332 Or 20, 24, 22 P3d 739 (2001). The policy is interpreted from the perspective of the "ordinary purchaser of insurance." *Totten v. New York Life Ins. Co.*, 298 Or 765, 771, 696 P2d 1082 (1985); *see also Botts v. Hartford Acc. & Indem. Co.*, 284 Or 95, 100, 585 P2d 657 (1978) (same). "If the term at issue is not defined in the policy, the next step is to look to the plain meaning of the term." *North Clackamas School Dist. No. 12 v. OSBA*, 164 Or App 339, 344, 991 P2d 1089 (1999), *rev den*, 330 Or 361 (2000); *see also Totten*, 288 Or at 770-71 ("The terms of a writing are presumed to have been used in their primary and general acceptation.").[4]

■        Thus, the determinative inquiry here: From the perspective of the "ordinary purchaser of insurance," what did plaintiff and Guthrie Motors intend when they entered into their insurance contract? As noted, the policy at issue here provided that plaintiff will pay all sums that an "insured" is legally obligated to pay as damages because of bodily injury. Further, an "insured" under the policy included the policyholder and, generally, "[a]nyone else while using with [the policyholder's] permission a covered 'auto' [the policyholder] *own*[s] * * *." (Emphasis added.) Consequently, the determination of coverage turns on the meaning, in this context, of "owns."

We begin with the disputed term's ordinary meaning. To "own" means "to have or hold as property or appurtenance : have a rightful title to, whether legal or natural :

---

[4] The court in *Totten* cited ORS 42.250 in support of its statement. That statute provides:

"The terms of a writing are presumed to have been used in their primary and general acceptation, but evidence is admissible that they have a technical, local, or otherwise peculiar signification and were used and understood in the particular instance, in which case the agreement shall be construed accordingly."

POSSESS." *Webster's Third New Int'l Dictionary* 1612 (unabridged ed 2002); *see Black's Law Dictionary* 1137 (8th ed 2004) ("[t]o rightfully have or possess as property; to have legal title to"). Those definitions comport with the common understanding of "owner" in the liability insurance context. *See, e.g., Hawaiian Ins. & Guar. v. Fin. Sec. Ins.*, 72 Haw 80, 88, 807 P2d 1256, 1260 (1991) ("[T]he word 'owner' when considered in its plain, ordinary and accepted sense in common speech would include a buyer who enters into a valid sales agreement and takes possession and control of the subject vehicle."). In a case involving issues very closely related to those presented here, the Oregon Supreme Court also focused on the possessory and control attributes of ownership. *See Fagg v. Massachusetts B. & I. Co.*, 142 Or 358, 19 P2d 413 (1933).

In *Fagg*, King agreed to transfer a Packard automobile to Day in exchange for a Buick owned by Day and certain stock. King delivered the Packard to Day in March 1929, and Day delivered the Buick and the stock to King. However, King still owed some money to Oregon Industrial Loan Company on the Packard, and he agreed to pay it off after Day took the car. 142 Or at 361-62. Several months later, with Day's wife at the wheel, the Packard was involved in an accident with an automobile owned by plaintiff Fagg; Mrs. Fagg was injured in the accident. *Id.* at 360.

At the time of the accident, King had not paid off the loan on the Packard. King did subsequently pay off that loan—and only then did Day obtain the certificate of title. Thus, at the time of the accident, the certificate of title was held by Oregon Industrial Loan Company. *Id.* at 362.

Fagg subsequently brought a property damage action against King and Mrs. Day, and Mrs. Fagg brought a personal injury action against the same defendants. *Id.* at 361. Mrs. Day tendered the defense of both actions to King's (the seller's) insurer, Massachusetts Bonding & Insurance Co., which refused the tender on the ground that the Packard had been sold to Day before the accident. Ultimately, the Faggs obtained judgments against Mrs. Day but not against King. Mrs. Fagg assigned her judgment to her husband, and he brought an indemnity action against Massachusetts

Bonding to collect both judgments. *Id.* Fagg prevailed in that action, and Massachusetts Bonding appealed.

The central issue on appeal concerned whether, at the time of the accident, the Packard was still insured under King's policy with Massachusetts Bonding. The pertinent policy language provided:

"In the event an automobile covered by this policy is sold, transferred or assigned, the indemnity provided herein shall not extend to such purchaser, transferee or assignee except by the written consent of the company endorsed hereon."

142 Or at 359. Thus, the court stated, "The first question to be disposed of is, whether the Packard car was 'sold, transferred or assigned' by King to Day prior or subsequent to the accident." *Id.* at 361.

In resolving that issue, the court first quoted *Pacific States F. Ins. Co. v. C. Rowan M. Co.*, 122 Or 665, 673, 260 P 441 (1927), for the proposition that, "[i]n this state[,] the equitable title, coupled with the actual possession of the property insured, bears with it all the incidents of legal title[.]" 142 Or at 363. The court further noted:

" 'It is well settled by authority that conditions in insurance policies that the assured shall have "unconditional and sole ownership" of the property insured, or that he shall have "the title in fee simple," are complied with by showing that the assured has the equitable title. It is held in many cases that possession under a contract to convey is "unconditional and sole ownership," and also that it is "title in fee simple," within the meaning of that requirement of the policy.' "

*Fagg*, 142 Or at 363-64 (quoting *Pacific States F. Ins. Co.*, 122 Or at 673, in turn quoting *Arkansas Ins. Co. v. McManus*, 86 Ark 115, 119, 110 SW 797, 798 (1908)).

Applying those principles, the court concluded that the Packard had been "sold, transferred or assigned" before the accident and, thus, the seller's insurer, Massachusetts Bonding, had no liability. The court explained:

"When the Packard car was delivered by King to Day, King completely lost control and dominion over it. Nothing

further remained for Day to do. He fully performed his part of the agreement when he delivered his Buick automobile and corporate stock to King. * * *

.      "* * * * *

"In the case at bar King could not, after he had made delivery of the Packard, have prevented Day from using the automobile in any manner the latter desired. Day's use from that time on was not by virtue of a license or permission, but of a right based on his having performed in full his part of the contract of purchase thereof from King."

142 Or at 365-66; *see also Wisbey v. Nationwide Mut. Ins. Co.,* 264 Or 600, 603, 507 P2d 17 (1973) ("Ownership of an automobile implies the right of possession and control.").

*Fagg* strongly informs our analysis here. Although the court in that case was not interpreting the term "own" in an insurance policy, its interpretation of the phrase "sold, transferred or assigned" addressed much the same issue. The *Fagg* court enunciated the following principles that bear directly on our assessment of how an objective purchaser of insurance would understand "own" in the context of auto liability coverage:

- Equitable title, combined with possession, is functionally equivalent to legal title.

- Control and dominion are important aspects of ownership.

- The buyer's complete performance under the contract supports a conclusion that the buyer owns the item purchased.

The parties in this case dispute the import of the *Fagg* court's inclusion of "complete performance" as a factor in its decision. *See, e.g.,* 142 Or at 365 (stating that Day had "fully performed his part of the agreement"). Defendant asserts that Guthrie Motors continued to own the pickup until it obtained clear title for the Mitsubishi trade-in: "Because Crutchfield failed to tender the required consideration for the purchase of the pickup truck, the sale was not complete and Guthrie [Motors] retained both an ownership interest in, and a right to possess, the pickup." According to defendant, the "purchase and sale of the pickup was not

finally completed until * * * six months after the parties initially entered into the first stage of the transaction" when Guthrie Motors finally obtained clear title. Defendant insists that *Fagg* supports her position:

> "The *Fagg* case is distinguishable from the case at bar because, at the time of this accident, neither Crutchfield nor Guthrie [Motors] had fully performed their parts of the agreement. Crutchfield had not provided consideration for his purchase of the pickup (i.e., clear title to his trade-in vehicle) and Guthrie [Motors] had not paid Crutchfield full consideration for the trade-in. Again, in the *Fagg* case, Day had performed *all* the requirements of the contract entitling Day to title for the Packard. In contrast, Crutchfield had not performed *any* of the requirements of his contract with Guthrie. Therefore, he was not entitled to either delivery of title to the pickup, the money originally provided to him by Guthrie [Motors], or to the remaining $500."

(Emphasis in original.)

Not surprisingly, plaintiff takes a different view of *Fagg*:

> "[I]t doesn't matter that, at the time of the accident here, Crutchfield had not performed the last of his obligations under the contract. He had delivered possession of the [Mitsubishi], as agreed, but had not yet delivered clear title. The agreement, however, didn't require him to deliver the title immediately, or by any particular date. In the absence of an agreed deadline, Crutchfield had a reasonable time to perform. If he failed to perform within a reasonable time, Guthrie Motors could declare him to be in breach and seek relief in court—either rescission of the transaction and reconveyance of the pickup or, more likely, damages. But the mere possibility that Crutchfield *might* breach the agreement, leading (perhaps) to rescission, didn't give Guthrie Motors the right, pending breach and rescission, to control Crutchfield's use of the pickup."

(Emphasis in original.) Consequently, plaintiff concludes, "When Crutchfield drove off in the pickup, he owned it. He had possession of it and a legal right to it."

We agree with plaintiff's analysis. To be sure, the court in *Fagg* was faced with a situation in which, at the time of the accident, the buyer (Day) had performed all duties

under the sales contract. Nevertheless, we do not understand that circumstance to have been the *sine qua non* of the court's analysis and disposition. That is, while complete performance of obligations under the sales contract necessarily established that ownership of the Packard had passed, the lack of complete performance did not preclude a transfer of ownership. Rather, the combination of some legal claim to the automobile, together with the seller's relinquishment of control over the automobile's use, is sufficient. Thus, as plaintiff asserts, although, at the time of the accident, Crutchfield had not yet fully performed all his obligations under the contract, that did not divest him of a legal claim to the pickup, nor did it give Guthrie Motors the right to control Crutchfield's use of the pickup.

We note, moreover, that courts in other states likewise have concluded that full performance by the buyer is not a prerequisite to the buyer's ownership of the automobile in this context. *See W.W. Lynch v. United States Branch, Gen. Acc. F. & L. Assur. Corp.*, 327 F2d 328, 332 (4th Cir 1964) ("We think that equitable ownership coupled with possession and the right to operate the automobile is sufficient ownership to make the automobile an 'owned' one within [the] liability insurance policy."); *Hults v. Pash*, 161 Ariz 506, 507, 779 P2d 821 (Ariz App 1989) ("[T]he fact that the terms of the sale included installment payments does not negate the transfer of ownership[.]"); *Hewitt v. Safeway Ins. Co. of Louisiana*, 787 So 2d 1182, 1187 (La App 2001) (ownership transferred with possession when parties had agreed on the object to be transferred and price to be paid, notwithstanding that price was not paid in full at time of transfer).

Here, it is beyond dispute that Guthrie Motors and Crutchfield formed a contract for the sale of the pickup: Guthrie Motors agreed to sell the pickup to Crutchfield and to give him additional cash; in return, Crutchfield agreed to give Guthrie Motors the Mitsubishi and to provide clear title at some unspecified future point. *See* ORS 72.2040(1) ("A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract."). The parties exchanged automobiles and signed the contract; Guthrie Motors performed all obligations that it was then required to

perform. As for Crutchfield, as plaintiff argues, he was required to provide clear title only within a "reasonable time." *See* ORS 72.3090(1) ("The time for shipment or delivery or any other action under a contract if not provided in this chapter or agreed upon shall be a reasonable time.").

Because a reasonable time for performance of Crutchfield's obligation to provide clear title had not expired at the time of the accident—which occurred the same day as the sale—Guthrie Motors had no right to seek rescission or to sue for breach. As of that time, Crutchfield had breached no obligation under the contract. Further, in all events, even if Crutchfield had not ultimately delivered clear title within a reasonable time, Guthrie Motors would have had no right to unilaterally retake possession of the pickup.

■ In short, we believe that, given the common and unambiguous meaning of "own," as amplified by *Fagg*'s analysis, when plaintiff and Guthrie Motors entered into the insurance contract, they did not intend that plaintiff's indemnity obligation would extend to accidents that occurred after (1) the insured had entered into a sales contract, such as the one in this case, with a buyer; (2) the buyer had taken possession of the automobile; (3) the buyer had performed all then-due obligations under the sales contract; and (4) the insured had no control over how the buyer used the automobile. An ordinary purchaser of insurance would not intend or expect that the coverage it has purchased would protect a party who had an interest in the transferred automobile, who had possession of the automobile, and who had complete control over the automobile's use.

Our conclusion in that regard is dispositive of the coverage question. Nevertheless, we deem it prudent to briefly address the significance in this context of certain provisions of the Oregon Vehicle Code.[5] Although the parties

---

[5] *See* ORS 801.375 and ORS 803.010. Those statutes provide, respectively:

" 'Owner' when referring to the owner of a vehicle means:

"(1) The person in whose name title to a vehicle is issued, and who is entitled to possession and use of the vehicle.

"(2) If the title and right to possession and use for a vehicle are in different persons:

"(a) The person, other than a security interest holder, who is entitled to the possession and use of the vehicle under a security agreement.

here do not invoke those provisions in their briefs, if they were applicable, we could not ignore them. *See Miller v. Water Wonderland Improvement District*, 326 Or 306, 309 n 3, 951 P2d 720 (1998). Those provisions could, arguably, be pertinent because, at the time of the accident here, Guthrie Motors had not yet completed the "Application for Title and Registration" for the pickup. *See* 200 Or App at 149.

In contrast to the analysis set forth above, some courts have held that state vehicle licensing and title statutes are determinative of ownership for insurance coverage purposes. As one treatise explains:

> "Where the statutory transfer provisions have not been complied with, the seller of an automobile involved in an accident has been found to remain the owner of the automobile for the purpose of determining the coverage of the buyer's and seller's automobile liability policies, and the transaction does not terminate [the] seller's automobile liability insurance coverage."

Lee R. Russ & Thomas F. Segalia, 8 *Couch on Insurance* 3d § 116:40, 116-51 to 116-52 (2000) (footnotes omitted). *Gaddy v. State Farm Mut. Auto. Ins. Co.*, 32 NC App 714, 716, 233 SE2d 613, 614 (1977), exemplifies that approach. There, despite the fact that the purchaser had paid for the car and had possession of the car, the court held that, "[u]nder North Carolina law, an automobile is not 'owned' within the meaning of an automobile liability insurance policy until the transferee obtains from the transferor a properly executed certificate assigning and warranting title." *See also, e.g., Calhoun v. Farm Bureau Mutual Insurance Company*, 255 Iowa 1375,

---

"(b) The lessor or lessee of a vehicle, as designated by the lessor on the application for title, if the lessee is entitled to possession and use of the vehicle under a lease agreement."

and

"A certificate of title is prima facie evidence of the ownership of a vehicle or of an interest therein. In all actions, suits or criminal proceedings, when the title to or right of possession of any vehicle is involved, proof of the ownership or right to possession shall be made by means of:

"(1) The original certificate of title issued by the Department of Transportation;

"(2) A salvage title certificate issued by the department; or

"(3) The department records as provided under ORS 802.240."

125 NW2d 121 (1964) (parties traded automobiles with one another, but because they did not comply with statute for transfer of certificate of title, ownership did not change for liability insurance purposes).[6]

■    Oregon law is to the contrary. First, the content and design of the Oregon Vehicle Code demonstrate that the legislature did not intend those statutes to define terms (such as "own") for purposes of contracts between private parties generally, much less for purposes of auto liability policies particularly. Rather, the legislature's express intent in the vehicle code in general, and in the "provisions * * * relating to the registration and titling of vehicles" specifically, ORS 801.020(1)(c), was "to provide a comprehensive system for the regulation of all motor and other vehicles in this state," ORS 801.020(1). Moreover, the definitions in the vehicle code, including the code's definition of "owner," ORS 801.375, purport to govern only the construction of the code itself. *See* ORS 801.100. In contrast, nothing in the insurance code—which *does* address insurance policies—defines the term "owns" as used in automobile liability policies.

That understanding of the vehicle code comports with the analysis in *Fagg*. There, the court explained that, in arriving at its conclusion that the Packard had been sold to Day at the time of the accident, it had "not overlooked" the titling, transfer, and registration provisions of the vehicle code. The court stated:

"These statutory provisions recognize that the ownership of motor vehicles does not depend upon the certificate of title or the registration and license of the motor vehicle.

---

[6] In contrast, courts in other states have taken the approach that vehicle code provisions are not dispositive of "ownership" for liability insurance purposes. *See, e.g., Hawaiian Ins. & Guar.*, 72 Haw at 84, 807 P2d at 1258 (ownership of an automobile may pass for insurance purposes "despite non-compliance with the motor vehicle registration statute"); *Hall v. Hong Seung Gee*, 725 P2d 1164, 1166 (Colo Ct App 1986) ("[N]on-delivery of the certificate of title does not prevent a change of ownership, and * * * delivery of possession constitutes a transfer of ownership as between the parties involved[.]"); *see also Morgan v. State Farm Mut. Auto. Ins. Co.*, 402 A2d 1211, 1215 (Del Super Ct 1979) ("[U]nder the majority rule, [the seller's] inadvertent failure to observe the proper procedure does not invalidate the intended sale * * * and her insurer cannot be rendered liable[.]").

[The buyer,] Day, without question, at the time of the accident was at least the equitable owner of the Packard automobile."

142 Or at 364, *accord Wisbey*, 264 Or at 603 (concluding that there was no coverage under seller's liability insurance: "[T]he Chevrolet automobile was the subject of [the buyer's] ownership without respect to the undelivered certificate of title[.]").

Conversely, nothing in this record indicates that the insured and the insurer intended the policy to incorporate definitions or concepts from the Oregon Vehicle Code. *See Joseph v. Utah Home Fire Ins. Co.*, 313 Or 323, 835 P2d 885 (1992). In *Joseph*, the court addressed whether a child reared by the plaintiff as his own child, although not related to him by blood, marriage, or formal adoption, was entitled to coverage as a "foster child" within the meaning of the plaintiff's automobile insurance policy. "The question," the court explained, "is whether CSD's definition of 'foster child' under the child welfare statutes is the one to which this insurance policy refers." 313 Or at 328. The court concluded that it was not, instead applying the rules of construction set out above. *See also Totten*, 298 Or at 769 (parties did not intend to incorporate statutory definition of "aircraft" into insurance policy). The vehicle code is inapposite.[7]

We turn, finally, to defendant's contention that plaintiff's insurance policy should be interpreted to provide coverage even for nonowned automobiles driven by "customers" of an auto dealership. Defendant asks us to interpret the policy language set out above, 200 Or App at 149-50, to mean

_____

[7] Defendant argues that, "[u]nder the Oregon law of sales, we * * * know that ownership of a titled motor vehicle does not pass on the mere transfer of possession of the vehicle." In support of that proposition, she invokes *So. Seattle Auto Auction, Inc. v. Ladd*, 230 Or 350, 370 P2d 630 (1962), *Plummer v. Kingsley*, 190 Or 378, 226 P2d 297 (1951), and *Johnson v. Iankovetz*, 57 Or 24, 110 P 398 (1910). Those cases, however, did not involve interpretation of an insurance contract. To be sure, for some purposes—such as an action for replevin (*Johnson* and *Plummer*) or an action "in claim and delivery" (*So. Seattle Auto Auction, Inc.*)—title may be a more substantial incident of ownership than it is here. Again, however, the question before us is not when or whether ownership may pass in other contexts for other purposes. Rather, our task is to ascertain whether, in entering into the insurance contract here, an objectively reasonable insurer and insured would have intended that, in the circumstances here, the insured dealership would be considered to "own" the vehicle, obligating the insurer to provide continuing liability coverage.

that an "insured" included any customer of Guthrie Motors who did not have insurance. In its request for reconsideration in the trial court, plaintiff explained why that would be an incorrect interpretation of the policy:

> "[T]here are *no* exceptions to the *requirement* that a person be driving a Guthrie Motors-owned vehicle with Guthrie Motors's permission in order to qualify as an insured. The 'exceptions' * * * found in Paragraphs 1.a.(2)(a) - (e) * * * are exceptions to the general rule that permissive users of Guthrie Motors-owned vehicles are insureds. In other words, the policy provides in Paragraph 1.a.(2) that every permissive user of a vehicle owned by Guthrie Motors is an insured *except for* the people described in the five exceptions in Paragraphs 1.a.(2)(a) - (e), one of which * * * is any customer of Guthrie Motors. Thus, * * * the policy plainly provides that a person *must* be driving a Guthrie Motors-owned vehicle to be an insured, and even then *Guthrie Motors's customers do not qualify.*
>
> "(The customer exception *itself* has an exception, in Paragraph 1.a.(2)(d)(i), for customers who do not have their own insurance. Accordingly, a customer of Guthrie Motors, using a Guthrie Motors-owned vehicle with Guthrie Motors's permission, will qualify as an insured under Guthrie Motors's policy, if the customer does not have his own insurance. Even so, the customer must be driving a vehicle owned by Guthrie Motors.)"

(Emphasis in original.) We agree with that analysis. The plain wording of the exceptions, considered in the context of the coverage provisions of the policy, demonstrates that plaintiff's liability did not extend to vehicles not owned by Guthrie Motors.

In summary, we conclude that, under the terms of the insurance policy here, plaintiff's insured, Guthrie Motors, did not "own" the Toyota pickup when the accident occurred. Moreover, the policy did not apply to customers who were driving vehicles not owned by Guthrie Motors. Accordingly, there was no coverage. The trial court correctly granted plaintiff's motion for summary judgment and denied defendant's motion.

Affirmed.