Argued February 10; affirmed February 28;
rehearing denied April 4, 1933

# FAGG *v.* MASSACHUSETTS BONDING & INSURANCE CO.

(19 P. (2d) 413)

*James L. Conley,* of Portland (A. G. Fletcher, of Portland, on the brief), for appellant.

*W. C. Winslow,* of Salem, for respondent.

BAILEY, J. During December, 1928, the defendant, Massachusetts Bonding and Insurance Company, issued to one William King an automobile liability and property damage policy of insurance covering a Packard automobile then owned by King. The policy provided that the insurance company "does hereby agree    *    *    *;

"To extend the indemnity provided by this policy so as to be available, in the same manner and under the same conditions as it is available to the named Assured, to any person or persons while riding in or legally operating any of the automobiles described in the schedule of statements, and to any person, firm or corporation legally responsible for the operations thereof, provided such use or operation is with the permission of the named Assured, or, if the named Assured is an individual, with the permission of an adult member of the named Assured's household other than a chauffeur or a domestic servant    *    *    *. In the event an automobile covered by this policy is sold, transferred or assigned, the indemnity provided herein shall not extend to such purchaser, transferee or assignee except by the written consent of the company endorsed hereon".

The policy was issued subject to the following conditions:

"G. No assignment of interest under this policy shall bind the company unless such assignment is consented to by endorsement hereon signed by the president, a vice-president, a secretary or an assistant secretary of the company.

\*    \*    \*    \*    \*    \*

"I. No agreement or condition of this policy shall be waived or altered except by endorsement attached hereto, signed by the president, a vice-president, a secretary or an assistant secretary of the company; nor shall notice to, or knowledge possessed by an agent or any other person be held to effect a waiver or change in any part of this policy unless endorsed hereon and signed as above provided.

"J. No person shall be deemed an agent of the company unless such person is authorized in writing as such agent by the president, a vice-president, a secretary or an assistant secretary of the company".

The foregoing provisions are the only parts of the policy material on this appeal.

On or about March 10, 1929, certain transactions were had between William King and Clarke H. Day, which, according to appellant's contention, resulted in the sale of said Packard on or about said date by King to Day, while the respondent asserts that the sale of the car was not consummated until after the accident hereinafter mentioned. The Packard automobile, however, was delivered on March 10, 1929, to Clarke Day, and thenceforth used by him and his family exclusively.

On or about July 21, 1929, while Mrs. Clarke Day was driving the Packard automobile, a collision occurred between it and an automobile owned by plaintiff herein, which collision damaged plaintiff's automobile and injured plaintiff's wife, Minnie Fagg. Thereafter, plaintiff brought an action against William King and

Mrs. Clarke Day for the damage to his automobile, and Minnie Fagg, at or about the same time, started action against the same defendants for personal injuries suffered by her in the accident.

The defendant herein, Massachusetts Bonding and Insurance Company, was notified by Clarke Day of the accident and was requested to defend both actions on behalf of Mrs. Day, but refused to do so, on the ground that the Packard automobile had been sold by King to Day prior to the accident and the written consent of the company to extend the policy to Day had not been procured. The insurance company did, however, defend on behalf of King.

Judgments were recovered by the respective plaintiffs against Mrs. Day alone, and the defendant King was awarded judgment for his costs against the plaintiffs. The judgment in favor of Mrs. Fagg was by her assigned to the plaintiff herein, and this action was instituted by him to recover from the insurance company the amount of both judgments.

The first question to be disposed of is, whether the Packard car was ''sold, transferred or assigned'' by King to Day prior or subsequent to the accident. It is undisputed that on or about March 10, 1929, King and Day entered into an agreement whereby King was to transfer the Packard car to Day in exchange for a Buick owned by Day and certain stock also owned by the latter. There was still an unpaid balance of seven hundred ninety six dollars which King owed on the purchase price of the Packard, and this was to be paid by King. It is also undisputed that the Oregon Industrial Loan Company held the contract for the balance of the purchase price. The evidence conclusively shows that the Buick automobile was, during the early part of March, 1929, delivered by Day to King

and by him turned in as part payment on a new. Packard automobile; and that the stock which Day was to deliver to King was at all times subject to King's order and had been delivered to King before the date of the accident. According to Day's testimony, the certificate of title to the Packard automobile was to be retained by the Oregon Industrial Loan Company and not to be delivered to him until after King had completed his payments to that company for the balance of the original purchase price of the car, and was in fact not delivered to Day until after the accident.

Day was connected with both the Oregon Industrial Loan Company and the Mortgage and Loan Company, which maintained offices in the same suite of rooms, and King was employed by the Mortgage and Loan Company as a salesman. At the time of the transaction here involved the Mortgage and Loan Company was indebted to King for commissions earned by him, and this money due King was to be applied on the balance owed on the car by King to the Oregon Industrial Loan Company.

Under date of March 19, 1929, King executed and delivered to Day a document signed by two witnesses and worded as follows:

"Portland, Oregon.

"Mr. Clarke H. Day,
"Portland, Oregon.

"Dear Sir:

"This is to acknowledge receipt in full for payment on Packard car.

"There is now a small loan against said car which amount I guarantee to pay in full. When the said amount is paid I agree to turn to you certificate of title free of all incumbrance.

"Wm. King".

The defendant maintains that the Packard car formerly owned by King was, prior to the accident, "sold, transferred or assigned" by King to Day. On the other hand, plaintiff insists that inasmuch as the certificate of title was not to be transferred to Day until after King had completed his payments on the original purchase price of the Packard, it was the intention of the parties that there should be no sale until the certificate of title was transferred, and since the original purchase price had not been paid in full by King nor the certificate assigned until after the accident, the car at the time of the accident had not been sold to Day.

■ In the case of *Pacific States Fire Insurance Company v. C. Rowan Motor Company,* 122 Or. 665 (260 P. 441), this court in construing the meaning of the phrase "sole and unconditional owner" when used in an insurance policy with reference to automobiles, said:

"The plaintiff seeks to show that the policy of insurance was null and void because of the asserted fact that the defendant possessed the motor cars as trustee, and not as sole and unconditional owner. In this state the equitable title, coupled with the actual possession of the property insured, bears with it all the incidents of legal title: Baker v. Insurance Co., 31 Or. 41 (48 Pac. 699, 65 Am. St. Rep. 807); Waller v. City of New York Ins. Co., 84 Or. 284 (164 Pac. 959, Ann. Cas. 1918C, 139). These cases are in complete harmony with the general rule as clearly stated in the case of Arkansas Ins. Co. v. McManus, 86 Ark. 119 (110 S. W. 798), where the Supreme Court of Arkansas wrote:

" 'It is well settled by authority that conditions in insurance policies that the assured shall have "unconditional and sole ownership" of the property insured, or that he shall have "the title in fee simple", are complied with by showing that the assured has the equitable

title. It is held in many cases that possession under a contract to convey is "unconditional and sole ownership", and also that it is "title in fee simple", within the meaning of that requirement of the policy. 2 Cooley's Briefs on Insurance, pp. 1354, 1376; Ostrander on Insurance, § 72. It is so held as to a parol contract to convey: Milwaukee, etc. Insurance Co. v. Rhea & Son, 123 Fed. 9 (60 C. C. A. 103)' ".

The Packard automobile was, prior to the accident, "sold, transferred or assigned" by King to Day. In arriving at this conclusion we have not overlooked the following provisions of the code:

"The certificate issued by the secretary of state, as in this act provided, shall be *prima facie* evidence of the ownership of such motor vehicle or of an interest therein:" § 55-201, Oregon Code 1930.

"In all actions at law or suits in equity, or in any criminal proceedings, when the title to or right of possession of any motor vehicle is involved, the record of registration and license, as the same appears in the files and records of the secretary of state, shall be *prima facie* evidence of ownership or right to possession of such motor vehicles": § 55-203, Oregon Code 1930.

These statutory provisions recognize that the ownership of motor vehicles does not depend upon the certificate of title or the registration and license of the motor vehicle. Day, without question, at the time of the accident was at least the equitable owner of the Packard automobile.

■ When it was provided in the policy of insurance that "in the event an automobile covered by this policy is sold, transferred or assigned, the indemnity provided herein shall not extend to such purchaser, transferee or assignee, except by the written consent of the company endorsed herein", it is obvious that

the intention was not to limit that provision to a completed sale, otherwise the words "transferred", "transferee", "assigned" and "assignee" would not have been used.

When the Packard car was delivered by King to Day, King completely lost control and dominion over it. Nothing further remained for Day to do. He fully performed his part of the agreement when he delivered his Buick automobile and corporate stock to King. Day's attitude regarding his control over the Packard was plainly indicated in the following excerpt from his testimony:

"Q. Suppose he [King] had come to you and tried to take possession of the car, saying, 'I want that car for my own use'?

"A. I don't believe he could have done that".

■ The provision of the policy of insurance to the effect that the insurer agreed to extend the indemnity provided therein to anyone legally operating the automobile "with the permission of the named assured" cannot, without doing violence to the language used, be made to refer to a purchaser who has paid the full purchase price of the automobile and who has obtained exclusive control and dominion over it. In *Flaherty v. Nieman,* 125 Iowa 546 (101 N. W. 280), the court quotes with approval the following definition:

"Permission involves leave and license, but it gives no right. If I avail myself of permission to cross a man's land, I do so by virtue of a license, not of a right. It is an abuse of language to call it a right".

In the case of *Mitchell Lime Company v. Nickless,* 44 Ind. App. 197 (85 N. E. 728), the court said:

"What does the word 'permitted' mean? It necessarily implies power to prevent".

In the case at bar King could not, after he had made delivery of the Packard, have prevented Day from using the automobile in any manner the latter desired. Day's use from that time on was not by virtue of a license or permission, but of a right based on his having performed in full his part of the contract of purchase thereof from King. In the case of *Whitney v. Employers' Indemnity Corporation,* 200 Iowa 25 (202 N. W. 236, 41 A. L. R. 495), was involved the question of interpreting a provision of an insurance policy reading as follows:

"(L) While the automobile covered by this policy is being used with the express or implied consent of the assured named in the policy * * * it is agreed that any insurance granted by this policy shall, in addition to the said named assured, inure to the benefit of any person responsible for the operation of the said automobile".

The court, in construing the foregoing provision with reference to a conditional sale of an automobile, said:

"To determine whether or not the aforesaid omnibus clause (L) is applicable to the situation before us, we of necessity must determine what the relation was between the grocery company and Fenlon.

"Plaintiff says that Fenlon was operating the car with the consent, either express or implied, of the grocery company. To successfully maintain this contention the grocery company's relation to said car must be shown to be such that they were in a position to give their consent. In other words, if Fenlon absolutely owned the car, the consent, or want of consent, on the part of the grocery company, would have nothing to do with this lawsuit.

"Fenlon's possession of the car is best explained in these words, taken from an exhibit in the case:

"'We will lend you this Ford roadster, engine No. 5,146,187, at a monthly rental of $50 per month,

which amount will be deducted from your earnings each month, and when such payment shall amount to $606.76 we will give you title to the car. Above amount covers fire, theft and liability insurance, license and extra tire'.

"Fenlon accepted the car under these conditions, on the 2d day of September, 1921. Counsel practically concede that this transaction amounts to a conditional sale.

"Later, when Fenlon left the employ of the grocery company, the relations between the grocery company and the car and Fenlon are measured by the testimony of Fenlon hereinbefore set out.

"The final analysis of the whole case must turn upon the question of who was the owner of the car at the time the policy of insurance sued on was issued, and at the time of the accident, which was four days later. If the grocery company was the owner of the car at the time, it could have given the consent required by the omnibus clause (L). If it was not the owner, then of course the omnibus clause (L) would not operate, and there would be no basis for the operation of clause (e).

"In the case of Davidson v. Hawkeye Ins. Co., 71 Iowa 532, 60 Am. Rep. 818, 32 N. W. 514, suit was based on an insurance policy which provided that the policy should be void in case the assured so conveyed or incumbered the property, without the written consent of the company. The plaintiff, Davidson, in the case, owned the property, and sold it to Lint under written contract for $400, to be paid $50 down and the balance in six instalments. Lint took possession of the property under the contract, and occupied it until it was destroyed by fire, before the first payment became due. It was held that such contract constituted a sale of real estate within the meaning of the policy, and that Lint was the real owner of the house that burned.

"Applying this line of logic to the facts in this case, in the event of the destruction or injury to the roadster in question, the loss would surely have been the loss of Fenlon, and not the loss of the grocery company''.

·The meaning of the word "consent" as used in the opinion last above quoted is synonymous with that of the word "permission" as used in the insurance policy in the case at bar. The operation of the Packard automobile by Mrs. Clarke Day at the time of the accident was therefore not with the permission of the assured, William King.

The plaintiff asserts that the defendant ought "not to be permitted to allege, set forth or contend" that William King was not the owner of the Packard automobile at the time of the accident, or that the policy of insurance did not extend to Clarke Day and his family, for the reason that at the time of the negotiations between Day and King the question of procuring the consent of the insurance company to the transfer of the car was taken up with the agent of the insurance company and the latter advised that it was not necessary to obtain such consent; and that, relying upon the statement of the agent, Day had paid the premium on this insurance policy and was induced not to procure further insurance.

The evidence in the case was to the effect that at the time of the negotiations between King and Day the Loomis-Bradshaw Insurance Agency, Inc., was the duly appointed and commissioned agent for the Massachusetts Bonding and Insurance Company for Oregon, and that Robert E. Loomis was the president of said agency. The original policy of insurance involved in this case was written by that agency, and at the time of the transaction between King and Day the matter was taken up by Day with Loomis and explained to him, with reference to whether or not it was necessary to procure the consent of the insurance company in order to extend the indemnity provided by the

policy so as to make it available to Day and his family. Loomis advised that no consent of the company was necessary, and thereupon Day paid to Loomis the premium on the policy, which had not yet been paid by King. Day testified that had he been advised otherwise he would have insisted upon obtaining the consent of the company or would have taken out other insurance. There appears to have been a question in the minds of both Day and Loomis as to whether or not the transaction between King and Day resulted in a sale, transfer or assignment of the Packard automobile by King to Day, since the certificate of title was not to be delivered to Day until King finished paying the purchase price of the automobile.

In the case of *Mercer v. Germania Insurance Company*, 88 Or. 410 (171 P. 412), a policy of fire insurance was issued in favor of A. G. Mercer, husband of Mary I. Mercer, the owner of the property. Later Mrs. Mercer learned of the mistake, went to the insurance agent and requested that her name be inserted in the policy in lieu of that of A. G. Mercer, or that the policy be canceled and a new one issued to her. She was advised to secure an assignment of the policy from A. G. Mercer and was assured that she would be indemnified in the event of a fire pending the assignment of the policy. After distinguishing between waiver and estoppel as applied to an action on a contract of insurance, this court said:

"It appears from the testimony that five or six weeks prior to the fire plaintiff learned for the first time that the policy was taken in the name of A. G. Mercer, whom in the meantime she had divorced; she thereupon sent an agent to Mr. W. E. Liston, defendant's agent who had written the policy; there is no

substantial dispute as to the conversation which ensued; Liston advised Mrs. Mercer to secure an assignment of the policy, but told her that the policy then in her possession was all right. There was sufficient testimony to take to the jury the question of whether plaintiff relied on this statement and failed for this reason to secure other insurance. Liston was still agent for the defendant when the above conversation took place.

"We find here all of the elements of an estoppel within the rule announced in Page v. Smith, 13 Or. 410, 414, 10 Pac. 833, and Oregon v. Portland General Electric Co., 52 Or. 502, 528, 95 Pac. 722, 98 Pac. 160. The policy written in April, 1915, was void; plaintiff was informed it was all right. This statement was made to a woman ignorant of the truth; it was made by an underwriter of large experience who knew the facts. He must have intended that plaintiff should act upon it and there is evidence that she did rely upon it to her injury. Defendant should not be permitted to escape liability on this policy on the ground that it named A. G. Mercer as the insured".

In the case at bar the Loomis-Bradshaw Insurance Agency, Inc., had authority to solicit and write insurance and to fill out the necessary papers consenting to the sale, transfer or assignment of insured property.

■ The distinction between waiver and estoppel is clearly set forth in *Kimball v. Horticultural Fire Relief,* 79 Or. 133 (154 P. 578), in an opinion citing many precedents and quoting with approval the following excerpt from *Dwelling House Insurance Company v. Dowdall,* 55 Ill. App. 622:

"The stipulation in the policy that no agent or other representative of the company shall have power to waive any provisions or condition of the policy may be effective as against an alleged waiver by agreement or contract with an agent or representative, but

has no application when the law declares a waiver by estoppel, because of the acts of the company through its agent or representative. Such estoppels do not rest upon the power, or lack of power, of the agent to change the provisions of the policy or waive any of its agreements, but arise in law, because of the acts of the company through its agent, acting in the scope of his apparent power as its representative''.

The question of whether or not the defendant was estopped by the acts of its agent from claiming that the insurance policy issued to King did not cover Mrs. Clarke Day, was, in view of the evidence in the case, properly submitted to the jury.

Defendant further contends on this appeal that the reply seeks a recovery on other and different grounds from those alleged in the complaint and in support of this contention directs attention to the fact that plaintiff in his complaint seeks a recovery on the policy as issued, while the reply is based on a waiver on the part of defendant. As we construe the allegations, the reply pleads an estoppel rather than a waiver. In other words, the plaintiff says that due to the acts of defendant's agent the defendant should not now be permitted to claim that the automobile had been sold, transferred or assigned to Day or that Mrs. Day was not protected by the policy in operating the automobile. In his case in chief the plaintiff proved the issuance of the policy and the occurrence of the accident, and introduced evidence to the effect that Mrs. Day was driving the car with the permission of King.

■ It was not necessary for plaintiff in making out a *prima facie* case to prove any of the allegations set forth in his reply. In passing upon a somewhat similar

case the Supreme Court of the state of Washington, in the opinion in *Port Blakely Mill Co. v. Hartford Fire Insurance Co.,* 50 Wash. 657 (97 P. 781), held:

"While there is some conflict, the weight of authority seems to be that the assured is only required to plead and prove a compliance with those conditions which, in insurance law, are conditions precedent to the creation of the contract of insurance, such as the payment of premiums. * * * Conditions to be performed by the assured after the policy has become a valid contract are conditions subsequent, being in the nature of conditions of defeasance, non-performance of which may release the insurer from liability. When in an action on an insurance policy a plaintiff pleads performance under the provisions of section 4934, supra, his allegation has reference only to the performance of conditions precedent, such as those that are necessary to the creation of the contract, or to the perfecting of his right of action, and not to conditions subsequent. * * *

"If there be conditions in a policy of insurance which must be performed before its risk attaches, such conditions are recognized as precedent ones, and a plaintiff is bound to show his compliance therewith, the same being necessary to create the contract and give it life; but after the contract has come into legal existence, and has attached as a binding obligation, those warranties or conditions which afford a means whereby the obligation of the insurer may be extinguished are regarded as conditions subsequent or conditions of defeasance".

The cases cited in defendant's brief are not in point. In the instance of *Mercer v. Germania Insurance Company,* supra, the plaintiff attempted to sue on a policy issued in the name of her husband, without alleging in the complaint estoppel on the part of the defendant. In the case of *Waller v. City of New York Insurance*

*Company,* 84 Or. 284 (164 P. 959, Ann. Cas. 1918C, 139), the plaintiff alleged that he had fully complied with all of the terms and conditions of the insurance policy, and in his reply averred for the first time that the defendant had waived certain defenses. The court said that he could not allege that he had fully complied with the contract and "when charged by the answer with shortcomings in that respect, shift his ground in his reply and show that the omissions stated by the defendant were waived by it, thus excusing the plaintiff from performance". The plaintiff, in *Cranston v. West Coast Life Insurance Co.,* 63 Or. 427 (128 P. 427), alleged payment of the premium on the insurance policy, and in his reply attempted to show waiver of payment. In the case at bar, the plaintiff does not plead a waiver, but an estoppel. Moreover, the defendant did not in its answer set forth as a defense that the automobile had been sold, transferred or assigned to Day, but merely denied that King owned the car.

The foregoing propositions have been considered in connection with defendant's motion for a directed verdict. Although we hold that the Packard automobile had, prior to the accident, been sold, transferred or assigned by King to Day, nevertheless the evidence relating to the conduct of defendant's agent was sufficient to require that the question of whether or not the defendant was estopped be submitted to the jury. We further hold that the allegations in the reply did not constitute a departure from the complaint.

The defendant assigns as error the refusal of the court to give three requested instructions involving matters which relate to the questions already disposed of in this opinion and therefore need not be further considered. The instruction given by the court and

excepted to by defendant is too lengthy to be incorporated in this opinion. However, it clearly related to the jury the contentions of the litigants and was in accord with the views herein expressed.

We find no error in the record, and the judgment appealed from is affirmed.

BEAN and CAMPBELL, JJ., concur.

RAND, C. J., concurs in that part of the opinion holding that the Packard automobile had been sold, but dissents from the conclusion that the question of estoppel was properly submitted to the jury.