473

Argued and submitted January 6, affirmed July 6, 2005

NORTH PACIFIC INSURANCE COMPANY,
an Oregon Insurance Company,
*Appellant,*

*v.*

AMERICAN MANUFACTURERS
MUTUAL INSURANCE COMPANY,
an Illinois Insurance Company,
*Respondent,*

*and*

JERRY BROWN COMPANY, INC.,
an Oregon corporation,
Troy Likens, Linda Likens,
Brad L. Morgan, and Robert J. Farrell,
*Defendants.*

0208-07903; A122602

115 P3d 970

Brian R. Talcott argued the cause for appellant. With him on the briefs were Richard T. Ashe, and Dunn Carney Allen Higgins & Tongue, LLP.

James M. Callahan argued the cause for respondent. With him on the brief was Callahan & Shears, P.C.

Before Wollheim, Presiding Judge, and Edmonds* and Schuman, Judges.

EDMONDS, J.

---

* Edmonds, J., *vice* Ceniceros, S. J.

**EDMONDS, J.**

Plaintiff North Pacific Insurance Company (North Pacific) brought a declaratory judgment action against American Manufacturers Mutual Insurance Company (American) asserting that American had a duty to defend and indemnify Brad Morgan and Linda Likens for monies paid by North Pacific to defend and settle a tort claim brought against Morgan and Likens by Robert Farrell for injuries he suffered in an automobile accident. The trial court denied North Pacific's motion for partial summary judgment, granted American's cross-motion for summary judgment, and entered a judgment of dismissal of North Pacific's action. ORCP 47. North Pacific appeals, and we affirm.

We review the trial court's grant of summary judgment to determine whether the moving party was entitled to judgment as a matter of law. *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997). In reviewing the court's summary judgment ruling, we view the facts in the light most favorable to the opposing party. *McCabe v. State of Oregon*, 314 Or 605, 608, 841 P2d 635 (1992). For the most part, the facts in this case are not in dispute.

In February 1999, Jerry Brown Company (Brown) leased a 1999 Chevrolet Suburban from Felco Auto Lease (Felco) for a three-year term with an option to purchase the vehicle at the end of the term. In January 2001, American was Brown's insurer, and the vehicle was listed as a covered automobile in Brown's insurance policy with American. That same month, Brown sold the vehicle to Troy Likens. The sale was evidenced by a writing entitled "Bill Of Sale" that was signed by Brown and Troy Likens. The document recites,

"On January 1, 2001 The Jerry Brown Co., Inc. (seller) sold one 1999 Chevrolet Suburban * * * to Troy Likens (buyer) for the amount of $21,000. Buyer will continue to make lease payments to Felco AutoLease in the monthly amount of $575.08 until such time as buyer secures other means of financing. As buyer pays each monthly lease payment the principal amount owed to seller will be reduced by $330.

"Additionally, buyer agrees to purchase and have in force full coverage auto insurance on the above vehicle from the date of purchase forward."

By March 5, 2001, Likens had obtained insurance coverage for the vehicle from North Pacific. Likewise, Brown had requested that American eliminate the coverage for the vehicle from its policy. However, Brown did not notify Felco of the transaction even though its lease with Felco prohibited Brown from assigning, transferring, or conveying its leasehold interests. Despite the terms of the sale agreement, Likens made the monthly payments required by the sale agreement to Brown, who in turn forwarded them to Felco as its lease payments.

In May 2001 and before Brown's lease with Felco expired, Likens' stepson, Brad Morgan, while driving the vehicle with Linda Likens, Troy's wife, as a passenger, collided with a vehicle driven by Farrell. At all times before the accident, the title to the vehicle listed Felco as the lessor and Brown as the lessee. Farrell filed an action against Morgan and Linda Likens for injuries arising out of the accident, and North Pacific undertook their defense. Eventually, North Pacific paid $650,000 to Farrell to settle Farrell's lawsuit against Morgan and Likens. This action by North Pacific seeks a declaration that American had a duty under its policy issued to Brown to defend Farrell's action against Morgan and Likens and a duty to indemnify North Pacific for the monies that it expended in that defense. Both parties moved for summary judgment, resulting in the trial court's determination that American had no duty to defend and the dismissal of North Pacific's action.

■ On appeal, North Pacific argues that Morgan and Likens were insureds under American's policy at the time of the accident because the vehicle was a "hired" vehicle within the meaning of the policy and they were using the vehicle with Brown's "permission." "Hired" autos are described by the policy as autos "you lease, hire, rent or borrow." American's policy defines as an insured "[a]nyone [other than the named insured] while using with your permission a covered 'auto' you own, hire or borrow[.]" A "covered" vehicle is defined in the policy, for purposes of liability, as "any auto."

Coverage is provided by American's policy for "all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an accident resulting from the ownership, maintenance or use of a covered auto."

North Pacific reasons, based on the above terms of American's policy, that Likens was using the vehicle with Brown's permission and that the vehicle was a "hired vehicle" because Brown continued to lease the vehicle from Felco at the time of the accident. In addition, North Pacific points to the facts that the lease prohibited Brown from conveying its lease rights without Felco's consent, that the Likens made their payments to Brown and not to Felco, and that Brown never notified Felco that it had sold the vehicle to Likens. North Pacific concludes, "In sum, the Vehicle lease between [Brown and Felco] remained in effect at the time of the Accident. Thus, the Vehicle remained a 'hired' auto under [American's] policy."

American counters that the sale agreement between Brown and Troy Likens constituted a conveyance of all Brown's leasehold interests in the vehicle, including its right to procure title from Felco to the vehicle when full payment was made and the option to purchase was exercised. According to American, it follows that, because at the time of the accident Brown had no residual right to possess or use the vehicle or any right to control or restrict Likens' use of it, the vehicle was not being operated with Brown's "permission" as required by American's policy for coverage. For that reason, American concludes that Morgan and Likens were not insureds under its policy and, therefore, it does not owe a duty to defend or indemnify them.

The issue whether American's policy covers Likens and Morgan as insureds turns on the construction of American's policy with Brown. Generally, as a contract, the construction of an insurance policy is a question of law. *May v. Chicago Insurance Co.*, 260 Or 285, 292-94, 490 P2d 150 (1971). " '[I]f the language of the contract is ambiguous, or if technical words, local phrases or terms of art are used and evidence is properly admitted showing meaning, the question becomes one of fact.' " *National Chiropractic Mutual Ins. Co.*

*v. Morgan*, 116 Or App 196, 200, 840 P2d 732 (1992), *rev den*, 315 Or 312 (1993) (quoting *Timberline Equip. v. St. Paul Fire and Mar. Ins.*, 281 Or 639, 643, 576 P2d 1244 (1978)). The goal in interpreting an insurance policy is to determine the intent of the parties, *North Pacific Ins. Co. v. Hamilton*, 332 Or 20, 24, 22 P3d 739 (2001), as interpreted from the perspective of the "ordinary purchaser of insurance." *Totten v. New York Life Ins. Co.*, 298 Or 765, 771, 696 P2d 1082 (1985). When a term is undefined in an insurance policy,

> "we identify the ordinary meaning of the term and examine both the immediate context in which it is used and the broader context of the policy as a whole to determine whether there remains any ambiguity about what the parties [to the policy] intended."

*Mutual of Enumclaw Ins. Co. v. Rohde*, 170 Or App 574, 579, 13 P3d 1006 (2000).

Thus, from the perspective of the "ordinary purchaser of insurance," what did Brown and American intend when they entered into their insurance contract? American's policy provides that insureds under the policy include those who use with Brown's "permission a covered 'auto' you own, hire or borrow." A "hired" auto is described by the policy as an auto "you lease, hire, rent or borrow." The word "permission" is not defined in the policy. However, the ordinary meaning of the word "permission" as used in the context of the policy of this case means "the act of permitting : formal consent : AUTHORIZATION." *Webster's Third New Int'l Dictionary* 1683 (unabridged ed 2002). "Permission" and "consent" are synonymous in this context. *See Mathews v. Federated Service Ins. Co.*, 122 Or App 124, 130 n 3, 857 P2d 852, *rev den*, 318 Or 25 (1993) (citing *Fagg v. Massachusetts B. & I. Co.*, 142 Or 358, 368, 19 P2d 413 (1933), for the proposition that, for the purposes of omnibus clauses in car insurance policies, the two terms are synonymous). Also implicit in the use of the term "permission" in the context of an insurance policy is the concept that the one granting permission or giving consent has the authority to do so. *See id.* at 129-31; *see also*, 8 *Couch on Insurance* § 122:25, 112-42 to 112-43 (3d ed 1997) (observing that "[t]here is an implicit, in the term 'permission,' element that the automobile is still the property of

the insured, and that its return to him or her is contemplated" with a footnote reference to *Fagg*). The question then becomes whether Brown and American contemplated that granting permission to use a vehicle included the act of selling Brown's interests in an automobile to another. For the reasons that follow, we conclude that the parties did not intend for the term "permission" to cover the circumstances of this case.

The language of the bill of sale and the testimony about that agreement unambiguously show a transfer of the incidents of ownership from Brown to Likens; in other words, Brown conveyed whatever property interests in the vehicle it held to Likens. The nature of that transaction is therefore fundamentally at odds with the proposition that Likens continued to use the vehicle with Brown's permission as the policy uses the term. The fact that the lease agreement remained in effect between Brown and Felco does not change the circumstances that gave rise to Likens' use of the vehicle at the time of the accident with Farrell. For instance, in *Wisbey v. Nationwide Mut. Ins. Co.*, 264 Or 600, 603, 507 P2d 17 (1973), the court held that "[o]wnership of an automobile implies the right of possession and control."[1] Here, as a matter of law, the conveyance of all incidents of ownership of the Suburban deprived Brown of any authority to consent to or deny use of that vehicle. *See Fagg*, 142 Or at 366-68; *see also Farmers Ins. Exchange v. Crutchfield*, 200 Or App 146, 154-59, 113 P3d 972, 977-80 (2005) (discussing *Fagg* and applying principles of opinion, although interpreting different words in insurance policy).

Nonetheless, North Pacific argues that the mere transfer of possessory rights under a lease is unlike the transfer of ownership that occurs when a buyer acquires ownership interests in a vehicle subject to the condition of paying off an encumbrance against it and that that is particularly the case when Brown never obtained Felco's consent to make the transfer to Likens and remained liable under the

---

[1] *Compare Mathews*, 122 Or App at 130 (contrasting the rights of a lessee that "may be restricted both temporally and in the manner of use" with "a transferee who has an unrestricted and irrevocable right to possess and control a car"), *with Fagg*, 142 Or at 365-66 (construing a conditional sale to give the buyer a contractual right of use rather than use by license or permission ).

terms of the lease. We are unpersuaded because North Pacific's argument does not take into account the distinction between the risks that American insured against and Brown's contractual liability under the lease with Felco. The fact that Brown remained contractually liable on its lease with Felco is not the kind of risk that American insured against in its policy. Rather, when the term "permission" in the policy is considered in the broader context of the policy, it is apparent that American insured against the risks created by the use of covered property by insureds under the policy and not against risks incurred by the named insured as the result of its contractual dealings. Without the retention by Brown of any possessory or leasehold interests in the vehicle, the risk created by operation of that vehicle by Likens was not a risk contemplated by the terms of the policy.

Affirmed.