Argued and submitted July 7, 2011, reversed and remanded November 15, 2012, petition for review denied May 16, 2013 (353 Or 562)

TRUCK INSURANCE EXCHANGE,
*Plaintiff-Appellant,*

*v.*

Joseph Ralph FRIEND, Jr.,
*Defendant-Respondent.*

Washington County Circuit Court
C091034CV; A144902

291 P3d 743

Thomas M. Christ argued the cause for appellant. With him on the briefs were Julie A. Smith and Cosgrave Vergeer Kester LLP.

W. Eugene Hallman argued the cause for respondent. With him on the briefs was Hallman & Dretke.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Duncan, Judge.

DUNCAN, J.

DUNCAN, J.

In this insurance-coverage dispute, defendant, Friend, was injured in an automobile accident. At the time, Friend was driving a 1967 Ford Mustang whose registered owner was Tamer Kehkia, the owner and president of TWW, Inc. (TWW), an auto dealer.[1] Friend sought underinsured motorist (UIM) benefits from TWW's insurer, Truck Insurance Exchange (Truck), under TWW's garage policy. Truck brought this action, seeking a declaration that Friend was not entitled to UIM benefits under TWW's policy because TWW did not own the Mustang. Friend counterclaimed, seeking a declaration that he was entitled to those benefits. The trial court granted summary judgment in favor of Friend, and Truck appeals, arguing that there are genuine issues of material fact regarding whether Friend is entitled to UIM benefits under TWW's policy.[2] We agree and, therefore, reverse and remand.

## I.  FACTS AND PROCEDURAL HISTORY

On appeal of a grant of summary judgment, we review the record in the light most favorable to the nonmoving party to determine whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997).

As mentioned, Friend was injured while driving the Mustang, which was registered to Kehkia. Friend and Kehkia assert that TWW owned the Mustang. Friend was the registered secretary of TWW. Friend and Kehkia were also friends and partners in another business, Ground Zero Motor Sports. Friend did mechanical work at TWW

---

[1] TWW did business as Cornelius Auto Sales.

[2] Friend also raises a cross-assignment of error, in which he contends that the trial court erred in dismissing one of his counterclaims. Because the trial court's general judgment incorporated its order dismissing the second counterclaim, ORS 18.082(2), the cross-assignment seeks "modification and reversal of that part of the judgment dismissing" his counterclaim rather than reversal of an intermediate ruling of the trial court. *Murray v. State of Oregon*, 203 Or App 377, 388, 124 P3d 1261 (2005), *rev den*, 340 Or 672 (2006); *see also* ORAP 5.57(2). Consequently, in the absence of a cross-appeal, we cannot address the issue. *Murray*, 203 Or App at 388.

approximately 10 to 12 hours per week, but he was not an employee of TWW.

Truck filed this declaratory judgment action because it believed that TWW did not own the Mustang and, therefore, that the policy it issued to TWW did not provide UIM benefits for Friend. In response, Friend asserted three counterclaims, each seeking a declaration that he was entitled to UIM benefits under the policy. On Truck's motion, the trial court dismissed Friend's second counterclaim. Then Friend moved for summary judgment, and the trial court granted that motion and entered a general judgment in favor of Friend. Truck appeals.

## II. PARTIES' ARGUMENTS ON APPEAL

Truck argues that the trial court erred in granting summary judgment to Friend because genuine issues of material fact had to be resolved before the court could determine whether the policy provided UIM coverage for Friend.[3] The parties identify three legal theories under which Friend might be entitled to UIM benefits under the policy. First, Friend asserts that the policy provided liability coverage for him and that ORS 742.502(2)(a)[4] requires a policy's UIM coverage to mirror its liability coverage. Truck responds that the policy provided liability coverage for Friend only if TWW owned the Mustang, which, the parties agree, is a disputed issue of fact.

Second, Friend argues that TWW owned the Mustang as a matter of law under ORS 822.040(1)(d), which provides that an auto dealer "shall be considered the owner * * * of all vehicles in the dealer's possession and operated or driven by the dealer or the dealer's employees." Truck

---

[3] As a preliminary matter, the parties agree that the UIM coverage expressly provided in the policy is limited to "owned autos." Consequently, the issue before us is whether, and to what extent, statutes require UIM coverage broader than the coverage expressly provided in the policy.

[4] ORS 742.502(2)(a) provides, in part:

"A motor vehicle bodily injury liability policy shall have the same limits for uninsured motorist coverage as for bodily injury liability coverage unless a named insured in writing elects lower limits."

responds that ORS 822.040(1)(d) is not relevant to the meaning of the term "owned" in the policy and, regardless, that application of that statute involves genuine issues of material fact.

Finally, Truck notes that another statutory provision regarding UIM, ORS 742.504,[5] may mandate UIM coverage for Friend while he drove the Mustang but that, in order to have been covered under that statute, Friend must have been driving the Mustang with the "permission" of TWW. Truck asserts that "permission" also involves a disputed factual question.

## III. ANALYSIS

In keeping with the parties' arguments, we address three questions: First, did the policy provide liability coverage for Friend as a matter of law?[6] Second, if not, did ORS 822.040(1)(d) mandate, as a matter of law, that TWW owned the Mustang? And, third, did ORS 742.504 require UIM coverage for Friend as a matter of law? We answer all three questions in the negative. As a result, Friend was not entitled to summary judgment because, as to each theory under which Friend might be entitled to UIM coverage, genuine issues of material fact remain unresolved.

A. *Liability Coverage Under the Policy*

As mentioned, Friend asserts that the policy provided liability coverage for him. Consequently, he argues, he had UIM coverage under the policy because, in his view, ORS 742.502(2)(a) requires a policy's UIM coverage to mirror its liability coverage. Accordingly, we begin by interpreting the policy to determine whether, as Friend contends, it provided

---

[5] The legislature has amended ORS 742.504 a number of times since 2005. Or Laws 2007, ch 131, § 1; Or Laws 2007, ch 287, § 3; Or Laws 2007, ch 328, §§ 5,6; Or Laws 2007, ch 457, § 1; Or Laws 2007, ch 782, § 3; Or Laws 2009, ch 67, §§ 15,16; Or Laws 2011, ch 192, § 2. Certain of those amendments are inapplicable and the others are immaterial to our analysis in this case. Therefore, for convenience, all references to that statute in this opinion are to ORS 742.504 (2005).

[6] Because we conclude that, under the policy, liability coverage for Friend depended on whether TWW owned the Mustang, we need not, and do not, address whether ORS 742.502(2)(a) requires the scope of UIM coverage to mirror the scope of liability coverage rather than merely requiring the dollar amount of each type of coverage to be the same.

liability coverage for Friend. Interpretation of an insurance policy is a matter of law. *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 469, 836 P2d 703 (1992). Our goal is to determine the parties' intentions. *Totten v. New York Life Ins. Co.*, 298 Or 765, 770, 696 P2d 1082 (1985). The policy "'must be viewed by its four corners and considered as a whole.'" *North Pacific Ins. Co. v. Hamilton*, 332 Or 20, 24, 22 P3d 739 (2001) (quoting *Denton v. International Health & Life*, 270 Or 444, 449-50, 528 P2d 546 (1974)). All parts of the policy "must be construed to determine if and how far one clause is modified, limited, or controlled by others." *Denton*, 270 Or at 450.

The policy provides coverage for two categories of "insureds." The first category is "you." The policy states, "Throughout this policy the words 'you' and 'your' refer to the Named Insured[,]" and the policy identifies the "named insured" as "TWW Inc" and "Cornelius Auto Sales." Under the policy, "you" is an insured "for any covered 'auto[.]'" The "schedule of coverage and covered autos" indicates that "covered autos" for liability coverage is "any auto." Thus, under the policy "you"—that is, TWW—has liability coverage for "[a]ny [a]uto."

The second category of insured is "[a]nyone else while using with your permission a covered 'auto' you own, hire, or borrow with [certain exceptions.]" Thus, the policy provides, with certain exceptions, liability coverage for "anyone else" while using, with TWW's permission, any auto that TWW owns, hires, or borrows. Specifically, the policy provides:

"3   Who Is An Insured

"a   The following are 'insureds' for covered 'autos'

"(1)   You for any covered 'auto'

"(2)   Anyone else while using with your permission a covered 'auto' you own, hire or borrow except

"(a)   The owner or anyone else from whom you hire or borrow a covered 'auto[.]' This exception does not apply if the covered 'auto,' is a 'trailer' connected to a covered 'auto' you own

"(b)   Your 'employee' if the covered 'auto' is owned by that 'employee' or a member of his or her household

"(c)   Someone using a covered 'auto' while he or she is working in a business of selling, servicing, repairing, parking or storing 'autos' unless that business is your 'garage operations'

"(d)   Your customers, if your business is shown in the Declarations as an 'auto' dealership[.] However, if a customer of yours

"(I)   Has no other available insurance (whether primary, excess or contingent), they are an 'insured' but only up to the compulsory or financial responsibility law limits where the covered 'auto' is principally garaged

"(II)   Has other insurance (whether primary, excess or contingent) less than the compulsory or financial responsibility law limits where the covered 'auto' is principally garaged, they are an 'insured' only for the amount by which the compulsory or financial responsibility law limits exceed the limit of their other insurance

"(e)   A partner (if you are a partnership), or a member (if you are a limited liability company), for a covered 'auto' owned by him or her or a member of his or her household

"(3)   Anyone liable for the conduct of an 'insured' described above but only to the extent of that liability[.]"

Thus, in order to have liability coverage for "any auto," Friend must be "you" under section 3a(1). Otherwise, he is "[a]nyone else" under section 3a(2) and is covered only "while using with your permission a covered 'auto' you *own, hire or borrow*." (Emphasis added.) The policy language unambiguously indicates that Friend is not "you." The policy provides that "you" is "the Named Insured." The named insured is "TWW Inc" and "Cornelius Auto Sales." Thus, the corporation, not Friend, is "you."

Nevertheless, Friend contends that he is "you" because he is the secretary of TWW, the named insured. He argues that an understanding of the policy that limits "you" to the corporation itself—rather than to the corporation acting through its agents—would render the policy a nullity, because "corporations lack the ability to drive motor vehicles." We reject that argument for two reasons.

First, the text of section 3a(2) demonstrates that "you" means only the corporation itself, not people who run or participate in the business.[7] Section 3a(2), which provides coverage for "anyone else," contains five exceptions. Those exceptions list employees, partners, members (of a limited liability company), and customers of "you" in various circumstances. That implies that those people are "[a]nyone else" to the extent that they do not fall within any exception. For example, if a partner were "you," the exception excluding coverage for partners under certain circumstances would be under the "you" section, not the "anyone else" section.

Second, as Truck points out, although it is true that a corporation cannot drive a car, a corporation can be *liable* for bodily injury and property damage arising from an accident, and that is the risk that the policy covers as to "you." Consequently, understanding the policy according to its plain meaning does not render its coverage illusory.

Friend is not "you," and, as a result, he had liability coverage under the policy only if he was "using with [TWW's] permission a covered 'auto' [TWW] own[ed], hire[d] or borrow[ed]." As noted above, the parties dispute whether TWW or Kehkia owned the Mustang. Consequently, whether Friend was covered under the policy is a disputed issue of fact, even in light of ORS 742.502(2)(a).[8]

B. *Effect of ORS 822.040*

Next we address Friend's proffered alternative basis for affirmance. Friend contends that ORS 822.040(1)(d) mandates, as a matter of law, the conclusion that TWW owned the Mustang.[9]

In interpreting a statute, our task is to discern the intent of the legislature. *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009); *PGE v. Bureau of Labor and Industries*,

---

[7] We express no opinion as to whether a sole proprietor or a shareholder in a corporation would be "you" under these circumstances.

[8] Although Friend mentions Oregon's financial responsibility law in passing, he does not make any adequately developed argument that that law is incorporated into or supersedes the text of the policy, and we express no opinion on that point.

[9] Friend made the same argument regarding ORS 822.040 below, and the trial court rejected it.

317 Or 606, 610, 859 P2d 1143 (1993). To determine what the legislature intended, we first consider the text of a statute in context. *Gaines,* 346 Or at 171; *see also State v. Cloutier,* 351 Or 68, 100, 261 P3d 1234 (2011) (explaining that courts consider prior cases construing a statute at the first level of analysis). "[O]nce the meaning and application of a statute have been put before us, we have an obligation to correctly construe and apply that statute." *Wilson v. Tri-Met,* 234 Or App 615, 624, 228 P3d 1225, *rev den,* 348 Or 669 (2010); *see also Stull v. Hoke,* 326 Or 72, 77, 948 P2d 722 (1997) ("In construing a statute, this court is responsible for identifying the correct interpretation, whether or not asserted by the parties.").

ORS 822.040(1) provides, in part:

"The holder of a current, valid vehicle dealer certificate issued under ORS 822.020 may exercise the following privileges under the certificate:

"\* \* \* \* \*

"(d) The dealer shall be considered the owner of vehicles manufactured or dealt in by the dealer, before delivery and sale of the vehicles, and of all vehicles in the dealer's possession and operated or driven by the dealer or the dealer's employees."

Friend argues that "the evidence is uncontradicted that the Mustang was one 'dealt in by the dealer' and was 'in the dealer's possession and operated or driven by the dealer or the dealer's employees.'" Consequently, he asserts, TWW "owned" the Mustang as that term is used in the policy.

Truck responds that ORS 822.040 is irrelevant to the meaning of the term "owned" as it is used in TWW's policy. Truck also argues that, even if ORS 822.040 were relevant to the meaning of the policy, the factual questions whether the Mustang was in TWW's possession and whether Friend was "the dealer or the dealer's [employee]" still precluded summary judgment.

To address Friend's argument, in addition to construing ORS 822.040, we must interpret the term "owned" as it appears in the insurance policy. As noted above, we review interpretations of insurance policies for errors of law and our goal is to determine the intent of the

parties. *Hoffman*, 313 Or at 469. We interpret the text of the policy "from the perspective of the 'ordinary purchaser of insurance.'" *Farmers Ins. Exchange v. Crutchfield*, 200 Or App 146, 154, 113 P3d 972, *rev den*, 339 Or 609 (2005) (quoting *Totten*, 298 Or at 771). "If the term at issue is not defined in the policy, then the next step is to look to the plain meaning of the term." *North Clackamas School Dist. No. 12 v. OSBA*, 164 Or App 339, 344, 991 P2d 1089 (1999), *rev den*, 330 Or 361 (2000).

We have previously addressed the meaning of "owned" in a policy whose operative language was identical to the language of the policy before us here. In *Crutchfield*, the plaintiff, Farmers, had issued an insurance policy to Guthrie Motors, an auto dealer. 200 Or App at 149. As relevant here, the policy defined "insured" as follows:

"(1)   You for any covered 'auto'.

"(2)   Anyone else while using with your permission a covered 'auto' you *own*, hire or borrow."

*Id.* at 149-50 (emphasis in original).

The defendant, Crutchfield, had traded in a car and received a truck from Guthrie Motors. Later the same day, he caused an accident while driving the truck. At the time of the accident, the paperwork for the purchase was not completed, and, after the accident, but before Guthrie Motors learned of the accident, Guthrie Motors attempted to unwind the sale because Crutchfield had failed to disclose a lien on the car that he had traded in. *Id.* at 149.

Farmers brought an action against Crutchfield, seeking a declaration that he did not have coverage under Guthrie Motors's policy because, at the time of the accident, Guthrie Motors no longer owned the truck and, consequently, Crutchfield was not an "insured" as defined in the policy. The trial court granted summary judgment for Farmers, and Crutchfield appealed, arguing, *inter alia*, that Guthrie Motors owned the truck as a matter of law. *Id.* at 153.

We explained that the relevant question was, "[f]rom the perspective of the ordinary purchaser of insurance, what did [Farmers] and Guthrie Motors intend when they entered into their insurance contract?" *Id.* at 154 (internal quotation

marks omitted). After considering the ordinary meaning of "own" and case law bearing on the issue, we concluded that Crutchfield, not Guthrie Motors, "owned" the truck because "(1) the insured had entered into a sales contract * * * with a buyer; (2) the buyer had taken possession of the automobile; (3) the buyer had performed all then-due obligations under the sales contract; and (4) the insured had no control over how the buyer used the automobile." *Id.* at 160. That is, as relevant here, Crutchfield owned the truck after he signed the paperwork and drove the truck off the lot.

Then we evaluated the significance of "certain provisions of the Oregon Vehicle Code," ORS 801.375 and ORS 803.010, for our conclusion that Crutchfield owned the truck at the time of the accident. *Crutchfield*, 200 Or App at 160. Those statutory provisions, respectively, define "owner" and govern the use of a certificate of title as proof of ownership of a vehicle. ORS 801.375; ORS 803.010. We explained that those provisions do not apply to insurance policies:

> "First, the content and design of the Oregon Vehicle Code demonstrate that the legislature did not intend those statutes to define terms (such as 'own') for purposes of contracts between private parties generally, much less for purposes of auto liability policies particularly. Rather, the legislature's express intent in the vehicle code in general, and in the 'provisions * * * relating to the registration and titling of vehicles' specifically, ORS 801.020(1)(c), was 'to provide a comprehensive system for the regulation of all motor and other vehicles in this state,' ORS 801.020(1). Moreover, the definitions in the vehicle code, including the code's definition of 'owner,' ORS 801.375, purport to govern only the construction of the code itself. *See* ORS 801.100. In contrast, nothing in the insurance code—which *does* address insurance policies—defines the term 'owns' as used in automobile liability policies."

*Crutchfield*, 200 Or App at 162 (emphasis and omission in original). Furthermore, we noted, "nothing in this record indicates that the insured and the insurer intended the policy to incorporate definitions or concepts from the Oregon Vehicle Code." *Id.* at 163. We concluded that "[t]he vehicle code is inapposite." *Id.*

Friend attempts to distinguish *Crutchfield* from the situation before us on the ground that, unlike ORS 801.375 and ORS 803.010, which refer only to vehicle ownership generally, ORS 822.040 is specifically related to insurance. That is so, Friend contends, because ORS 822.040 sets out rights of a dealer who has a "vehicle dealer certificate," and one of the requirements for issuance of a vehicle dealer certificate is a certificate of insurance. Truck responds that ORS 822.040 is not directly related to insurance and, furthermore, even if it is tangentially related to insurance, it is not a "mandatory insurance statute" because it does not require that an insurance policy must "define 'owned vehicles' in some manner contrary to common understanding, or that the policy must cover anyone driving a vehicle thus defined."

Truck has the better argument. As in *Crutchfield*, the relevant question here is, "[f]rom the perspective of the ordinary purchaser of insurance, what did [Truck and TWW] intend when they entered into their insurance contract?" 200 Or App at 154 (internal quotation marks omitted). Friend contends that the parties' intentions were set or superseded, as a matter of law, by the terms of ORS 822.040.

As Truck points out, ORS 822.040 does not "[prescribe] the terms and conditions of an insurance policy." Thus, the parties' intentions are not superseded by ORS 822.040. As we explained in *Crutchfield*, "the content and design of the Oregon Vehicle Code demonstrate that the legislature did not intend [ORS 801.375 and ORS 803.010] to define terms (such as 'own') for purposes of contracts between private parties generally, much less for purposes of auto liability policies particularly." 200 Or App at 162. That conclusion is equally true with respect to ORS 822.040. The mere fact that a certificate of insurance is a requirement of obtaining a vehicle dealer certificate does not make that provision of the vehicle code any more applicable to automobile insurance policies than the other provisions of the vehicle code. The code "'provide[s] a comprehensive system for the regulation of all motor vehicles and other vehicles in this state,'" *id.* (quoting ORS 801.020(1)); it does not dictate the meaning of terms in automobile insurance policies.[10]

[10] As Truck notes, "[t]he legislature knows how to regulate insurance coverage when it wants to." *See, e.g.,* ORS 742.450 (requiring certain contents and limiting

Insofar as Friend argues that, rather than superseding the intentions of Truck and TWW, ORS 822.040 informed the parties' understanding of the terms of the contract, we disagree; "nothing in this record indicates that the insured and the insurer intended the policy to incorporate definitions or concepts from the Oregon Vehicle Code." *Crutchfield*, 200 Or App at 163. In short, "[t]he vehicle code is inapposite." *Id.* Consequently, Friend is not entitled to summary judgment on the asserted ground that TWW was the owner of the Mustang as a matter of law.

C.  *Requirements of ORS 742.504*

Finally, we turn to the requirements of ORS 742.504. Truck asserts that that statute provides basic requirements for the scope of UIM coverage and that, although coverage may be required under that statute, a question of fact must be resolved before it can be applied here.[11]

ORS 742.504 provides a "comprehensive model [UIM] policy," *Vega v. Farmers Ins. Co.*, 323 Or 291, 301-02, 918 P2d 95 (1996), which sets out the minimum allowable coverage. A policy need not contain the exact terms of ORS 742.504, but it must provide coverage "no less favorable in any respect to the insured" than the model policy. ORS 742.504. Its basic requirement is that

"[t]he insurer will pay all sums that the insured, the heirs or the legal representative of the insured is legally entitled to recover as general and special damages from the owner or operator of an [underinsured] vehicle because of bodily injury sustained by the insured caused by accident and arising out of the ownership, maintenance or use of the [underinsured] vehicle."

ORS 742.504(1)(a). ORS 742.504 also provides definitions of the terms used in that basic provision. As relevant here, ORS 742.504(2)(c) provides:

---

exclusions in motor vehicle liability policies); ORS 742.504 (mandating that every UIM policy contain terms "no less favorable to the insured in any respect to the insured" than terms set out in the statute).

[11] Truck also asserts that the determination whether the Mustang was an "insured vehicle" required a factual determination. Because we agree that the issue of permission is a factual one, we do not reach that argument.

> "'Insured,' when unqualified and when applied to [UIM] coverage, means:
>
> "(A) The named insured as stated in the policy and any person designated as named insured in the schedule and, while residents of the same household, the spouse of any named insured and relatives of either, provided that neither the relative nor the spouse is the owner of a vehicle not described in the policy and that, if the named insured as stated in the policy is other than an individual or husband and wife who are residents of the same household, the named insured shall be only a person so designated in the schedule;
>
> "(B) Any child residing in the household of the named insured [subject to certain conditions]; and
>
> "(C) Any other person while occupying an insured vehicle, provided the actual use thereof is with the permission of the named insured."

Friend was not an "insured" under subsection (A) or (B). Under ORS 742.504(2)(c)(C), he was an "insured" if he was occupying an insured vehicle "provided the actual use thereof [was] with the permission of [TWW]." Truck asserts that the question of permission implicates the disputed factual question of ownership because "implicit in the use of the term 'permission' in the context of an insurance policy is the concept that the one granting permission or giving consent has the authority to do so." *North Pacific Ins. v. American Mfrs. Mutual Ins.*, 200 Or App 473, 478-79, 115 P3d 970 (2005) (holding that, "as a matter of law, the conveyance of all incidents of ownership of [an automobile] deprived [the insured] of any authority to consent to or deny use of that vehicle").

We agree. Although *North Pacific Ins.* interpreted "permission" in the context of an insurance policy, rather than a statute, it held that the plain meaning of "permission," in the insurance context, requires an ownership or possessory interest in the item regarding which permission is given. Consequently, in order for Friend to have been an "insured," within the meaning of ORS 742.504, as to the Mustang, the court must determine whether, as a factual matter, TWW had authority to give Friend permission to use it.

Because factual questions remain to be resolved under the theories under which Friend may be entitled to UIM coverage, the trial court erred in granting summary judgment to Friend.

Reversed and remanded.